Wis 585
LRA 644n

JACOB BERKSON

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

154   81
62a 263
62a 576

154   81
83a 369
154      81
108a ³300

*Filed at Ottawa October 29, 1894.*

1. CONTEMPT—*recital in record showing defendant was present in court.*
A recital in an order committing a debtor for contempt in failing
to turn over his property, that he came "having due notice of said
motion and application by his counsel," shows that he appeared
*in person,* after receiving notice through his counsel.

2. SAME—*failure of judgment debtor to testify and turn out property.*
A judgment debtor who has under his control the proceeds of a
stock of goods disposed of by him to others, and who contuma-
ciously refuses to testify honestly, fairly and truthfully in relation
to them and what he has done with them, and to turn them over to
the receiver, as required by order of court, is guilty of contempt.

3. APPEAL—*errors in execution of orders may be reviewed.* Upon an
appeal from an order committing a debtor for contempt in refus-
ing to obey orders directing him to submit to examination and
turn over his property to a receiver, errors in the execution of the
original orders and in the supplemental proceedings may be re-
viewed, as well as the question of jurisdiction, although no appeal
is prosecuted from the original orders.

*Berkson* v. *People,* 51 Ill. App. 102, affirmed.

APPEAL from the Appellate Court for the First Dis-
trict;—heard in that court on writ of error to the Circuit
Court of Cook county; the Hon. MURRAY F. TULEY,
Judge, presiding.

BLUM & BLUM, for appellant.

MOSES, PAM & KENNEDY, for People.

BAILEY, J.: This was a proceeding against Jacob
Berkson for contempt, for failing to obey an order of the
circuit court of Cook county, sitting as a court of chan-
cery. It appears that on the 22d day of September, 1891,
Aaron Feltenstein, having obtained a judgment at law
against the respondent and execution thereon having
been returned unsatisfied, filed his creditor's bill against

the respondent and others, seeking to reach equitable assets and to subject them to the payment of the judgment. Such proceedings were thereupon had in the matter of the creditor's bill that a receiver was appointed, and the respondent ordered to appear before one of the masters in chancery of the circuit court, and assign, transfer and deliver to the receiver, on oath, under the direction of the master, his property, real and personal, things in action, equitable interests and other effects not exempt from execution, and to deliver to the receiver all bills, notes, contracts, books of account, vouchers, etc., relating to his property or business, and to appear before the master and submit to an examination, as the master should direct, in relation to his business and property and the situation and disposition thereof.

The respondent appeared before the master and was examined at very considerable length, and at the close of the examination the master reported, among other things, that the respondent had in his hands at least $7500 of money derived from the sale of his goods, for which he failed to account, and that he had not truly divulged to the receiver his assets and property in his possession or under his control, and had willfully concealed the same, and had contumaciously refused to testify, and divulge the whereabouts of his assets and property.

On the coming in of the master's report, Feltenstein entered his motion for the commitment of the respondent for his failure to obey the order of the court, and the motion for commitment coming on to be heard, the court found that the respondent, in violation of the order and direction of the court, had not truly divulged to the receiver his assets and property in his possession and under his control, but had willfully concealed the same, and contumaciously refuses to truly divulge the whereabouts thereof, in violation and disobedience of the order of the court.

The court further found, among other things, that the respondent had, with intent to defraud his creditors, disposed of a large stock of goods to different parties, and that at the time the bill was filed he had, and still has, in his possession or under his control at least $7500 in money realized from the stock of goods, which he refused and still refuses to account for or turn over to the receiver, and that he absolutely refuses to honestly and truthfully testify and submit to an examination concerning his property and the disposition he has made of it.

He was thereupon adjudged and decreed to be in contempt, and was ordered to stand committed to the common jail of the county to answer for his contempt, and that he remain in custody until he comply with the order of the court, and, among other things, fully and truly submit to an examination, and testify and discover to the receiver, before the master, concerning his assets and property in his possession or under his control, and account for and turn over to the receiver the $7500 so found to be in his possession and under his control. This order was taken by the respondent to the Appellate Court by writ of error, and was there affirmed, and the present appeal is from the judgment of affirmance.

The point is made on behalf of the appellant that it does not appear that he was present before the court in person at the time the order adjudging him guilty of contempt and ordering his committal to the common jail therefor was entered, and that the court had no jurisdiction to enter such order.

It is recited in the order that the cause having come on to be heard, upon the motion of Feltenstein, for an order for attachment and commitment of the respondent for his failure to obey the orders of the court in the cause, and upon the report of the master, together with the testimony taken by him, and his findings and conclusions thereon filed in the cause, "and also came Jacob Berkson, having due notice of said motion and application by his

counsel," and the court having heard the evidence adduced and the report of the master, and the exceptions filed thereto, found the respondent guilty of contempt as charged, and ordered his committal, etc.

It can not be denied that the recital as to the appearance of the respondent is ambiguous. The ambiguity grows out of the somewhat unusual place given to the phrase, "by his counsel." It is contended that the recital, when properly construed, merely shows that the appearance of the respondent was by counsel and not in person, and that the court therefore was without jurisdiction. Without pausing to determine whether an appearance by counsel would have been sufficient to give the court jurisdiction to enter an order adjudging the respondent guilty of contempt and committing him to jail therefor, we are of the opinion that the most natural and obvious meaning of the recital is, that the respondent appeared,—that is, appeared in person,—after having received notice of the motion and application by, that is, through the instrumentality of, his counsel. In the above quotation of the language of the recital we have followed the punctuation as it appears in the record, and when that is observed, in connection with the form of the recital, we think it most in accordance with the grammatical construction of the language to understand the phrase "by his counsel," as qualifying the statement as to the mode in which notice of the motion was given, and not the mode in which the respondent appeared in answer thereto.

It is contended by counsel for the prosecution, that as no appeal or writ of error was prosecuted from the original order requiring the respondent to appear before the master and submit to an examination in relation to his property and assets and to turn his property over to the receiver, the only question now before the court is that of jurisdiction, and that the propriety of the order of commitment, or the correctness of the findings of fact upon which that order was based, can not be raised in

this proceeding.   In that view we are unable to concur.
The propriety of the original order may be conceded, and
yet errors may have intervened in its execution, and in
the supplementary proceedings which have resulted in
the conviction of the respondent for contempt and in his
commitment to jail, which may properly be reviewed on
this appeal, and, as we understand it, only errors of that
character are now assigned.

We are of the opinion that the evidence heard upon
the motion to commit the respondent for contempt was
sufficient to justify the order as made.   The testimony
taken before the master and all the proceedings had be-
fore him were presented and read on the hearing of the
motion, and we think the proper conclusion from all the
evidence is, that the respondent has in his possession or
under his control a large sum of money, the proceeds of
a stock of goods disposed of by him to different parties,
and that he contumaciously refuses to honestly, fairly
and truthfully testify in relation to such proceeds and as
to what he has done with them, and to turn the same
over to the receiver.   A discussion of the evidence in
detail will serve no useful purpose, but no one can read
it without being impressed with the belief that the re-
spondent, by various evasions, or by claiming not to
remember, is endeavoring to conceal and withhold from
the receiver an amount of money more than sufficient to
satisfy the complainant's judgment, realized by him from
the sale of his goods.   We think he was properly adjudged
guilty of contempt, and the judgment of the Appellate
Court affirming the judgment committing him therefor
will be affirmed.

*Judgment affirmed.*