## Wallace C. Clark, Assignee of Southern Hotel Co., v. A. J. Burke et al.

1. CONTEMPT OF COURT—*Power of the Appellate Court on Appeal.*—The Appellate Court, upon an appeal from an order committing a person for contempt, civil in its nature, will determine not only whether the court below had authority to make the order, but also the authority to make the order for the disobedience of which the order of commitment or other punishment was made, and will examine as to the alleged errors that may have intervened in the execution of the original order, and in the supplementary proceedings which have resulted in conviction.

2. SAME—*Power of the Appellate Court on Appeal.*—When the County Court has jurisdiction of the subject-matter and the person of an assignee, and orders him to pay certain sums of money, and afterward commits him to jail for contempt in refusing to comply with the order of payment, the Appellate Court will not, on an appeal from the order of commitment, consider matters which are mere errors alleged to have been committed in the former order, the order of commitment being collateral to such former order.

3. APPEALS—*Orders Appealable.*—An order of the County Court, under the act relating to assignments for the benefit of creditors, finding that an assignee had received certain funds and property, and ordering him to pay definite amounts to certain persons, is an appealable order, but a mere order of distribution of funds in his hands is not.

**Contempt of Court.**—Appeal from the County Court of Cook County; the Hon. ORRIN N. CARTER, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed January 22, 1896.

### STATEMENT OF THE CASE.

On the 18th day of July, 1894, the Southern Hotel Company, a corporation, running the Southern Hotel at the corner of Twenty-second street and Wabash avenue, in Chicago, made a voluntary assignment to Brodie B. Davis. Brodie B. Davis acted as assignee for a few days, when he came into the County Court and resigned.

The resignation was accepted, and on the 24th day of July, 1894, Wallace C. Clark was appointed assignee by the County Court. The order under which Wallace C. Clark was appointed assignee is peculiar.

The order of appointment of Clark recites that he agrees to make good whatever loss may result to the insolvent estate or assets on account of the further operation of the business, and further agrees to work without the usual fees or commissions given to an assignee.

In an order of court made March 19, 1895, the following appears:

STATE OF ILLINOIS, ⎫ ss.
  County of Cook, ⎰

In the County Court of Cook County, February Term, A. D. 1895.

IN RE SOUTHERN HOTEL CO., ⎫
        Insolvent, ⎬ No. 12,381.
WALLACE C. CLARK, Assignee. ⎭

" And now this day come A. J. Burke" et al.

" And the said A. J. Burke et al. having heretofore filed their petition in this court asking for an order upon the said assignee for the payment of certain labor claims, and the said assignee having filed his written objection to the granting of the prayer of said petition, and the said assignee having filed his answer to said petition, and the said D. M. Powers having filed his petition, praying for an order on the said assignee to pay his judgment claim, and the assignee having filed an answer thereto," etc., and this cause coming on to be heard upon the various petitions, objections and answers, and the court having heard the evidence in open court, and the arguments of counsel, and being fully advised in the premises:

The court finds that for the purpose of determining the assets of said insolvent at the time of the said resignation of Brodie B. Davis, and the substitution of Wallace C. Clark, the parties aforesaid, by their attorneys, on the first day of September, 1894, in open court examined the said Clark and the books, papers and accounts of said insolvent, and Brodie B. Davis, assignee, upon which said examination the court finds that the following assets came into the possession of said Clark, assignee of said insolvent, which assets were, and made up of, as follows, to wit:

Cash collections by said Clark, as assignee, from the guests of said hotel, in payments of their accounts, which had accrued before said 24th day of July, 1894, the sum of $759.17; accounts secured by baggage, $282.54; provisions and groceries, etc., in the store room, $50; stock of liquors in bar room, $75; one barrel machine oil, $40; one barrel compound, $40; equity in two cash registers, $187; making a total of $1,433.71.

The court further finds that in pursuance of an agreement entered into by all parties, there was appointed on the 15th day of October, 1894, three commissioners to visit the premises of the Southern Hotel, and determine if possible what property was there in the possession of the assignee not covered by any mortgage, lien, or otherwise incumbered, and being held for the benefit of the creditors.

And the court further finds that said commission, composed of Louis Parker, Milton Roberts and Mr. Loomis, were appointed by this court to visit the premises of said Southern Hotel, and to make a report to this court according to the aforesaid agreement.

The court further finds that the said commission entered into and upon their duties at once, and afterward made a written report to this court, which said report was duly approved, and is made a part of this order for the purpose of showing the additional property which came into the hands of said assignee, to be held for the benefit of the creditors, which said property was unincumbered, save by the judgment liens of the creditors named herein; that it was sold (?) by the assignee under the direction of this court, and that said assignee has never accounted or reported to the court the amount realized from said sales.

And the court further finds that said Clark, assignee, has not conducted the trust reposed in him for the benefit of the creditors of said estate as he should have done, but has neglected, and in every way refused to look after the interests of said creditors.

The court further finds that the said Clark is the husband of Louisa C. Clark, the principal creditor of said insolvent,

and that he has conducted the said business and handled the said estate for the benefit and interest of the said Louisa C. Clark, and at no time has he considered the interest of said creditors; that said estate has been wasted, and the property above referred to neglected and misused, and has been continually, to a recent date, used and mixed with the mortgaged property, and as a result there has been much waste.

And the court further finds that on the first day of August, 1894, the following claims for labor were fully filed with the said assignee; that said claims were for wages and services as laborers and servants of said insolvent; and that said wages were earned within three months next preceding the date of said assignment, which said claimants and the amounts thereof, are as follows, to wit:

" A. J. Burke, $8," etc.; total, $1,069.71.

And the court further finds that amounts of claims for labor against said estate are as set forth in the petition filed in behalf of the laborers.  And the court further finds that Brodie B. Davis has a lien in the sum and to the amount of fifteen and 35-100 dollars ($15.35) on the said assets coming into the hands of said Wallace C. Clark on July 24, 1894, etc.; total, $357.32.

The court further finds that all the material allegations in the various petitions filed herein are true.

It is therefore ordered, adjudged and decreed that the said Wallace V. Clark, assignee, forthwith pay, or cause to be paid, to Henry A. Hickman, attorney for certain labor claimants, the claims of said labor claimants, which were made up as follows, to wit:  " A. J. Burke, $8," etc., total, $1,069.71.

The court doth further order that the said assignee forthwith pay or cause to be paid " to Brodie B. Davis his certain claim, amounting to fifteen and 35-100 ($15.35) dollars," etc.; total, $357.32.

The assignee prayed and was allowed an appeal from this order, but does not appear to have perfected such appeal.

On the 18th of June, 1895, the following order was made :

"In the matter of the Southern ⎱ Voluntary Assignment.
    Hotel Company, debtor.   ⎰

It appearing to the court that the assignee of said insolvent estate has failed to comply with the order of this court, entered of record on said March 9, 1895, wherefore, the premises considered, it is ordered by the court that said assignee be, and is hereby ruled to show cause by June 20, 1895, at 10 o'clock A. M. of said day, why he should not be attached and punished for his said failure to comply with the said order of this court, entered of record in said cause March 9, 1895."

To this rule the assignee made answer, setting forth, among other things :

" Respondent, further answering, says that upon his appointment as assignee herein, he prepared and filed an inventory of the property of said estate, gave notice of the assignment to the creditors of the company, gave notice of the sale of all property of the estate, to be made under the orders and directions of the court, and did offer for sale all the property and estate of said company, and after said sale petitioned this court for leave to turn over the property of said estate to the mortgagees, who had filed their petitions in this court, no part of the said property of the said Southern Hotel Company having been sold at the assignee's sale, as ordered by this court.

" Respondent, further answering, says that during his management as assignee of said estate, he administered the affairs of said insolvent debtor under the directions of this honorable court, conducting said hotel business, and collected and disbursed all the money that came into his hands as shown by the reports herein on file, and incurred only such expense in the conduct of the business and in the course of administration as was absolutely necessary, and expended no money excepting what he deemed for the good and advantage of said estate.

" Respondent, further answering, says that he collected and paid out large sums of money weekly in the management of said estate, as a public hotel, as will more fully ap-

Clark v. Burke.

pear by reference to the reports herein filed, and made part thereof; that he paid out large sums of money while running said business to the servants, due for labor performed for B. B. Davis, Esquire, while assignee of said estate, as well as for labor performed by said servants in his own behalf while conducting said business; that he was compelled to pay a large sum of money to the special revenue agent, M. J. Mize, Esquire, for special revenue tax, as well as pay other large sums of money, due on or before the 24th day of July, 1894, and owing by said Southern Hotel Company prior to the assignment, as will by said books of said company more fully appear, as well as by the reports herein on file; that he incurred special expenses for publication notices, typewriting and stenographer's bills and attorney's fees, all of which were absolutely necessary in the ordinary course of expenses, in the administration of said estate.

" Respondent, further answering, says that about all the property of said hotel company was covered by mortgages and liens, and that said property was turned over to the mortgages after it had been offered for sale as to its equities, and the property which was not covered by mortgages and liens had been sold under the orders and directions of this court.

" Respondent, further answering, says that at the time of his accepting the office of assignee, there was outstanding on the hotel ledger, guests' accounts amounting to the sum of $1,714.50, and of which amount of said accounts receivable, at that time, he has since collected in the usual course of the business of said hotel, of said accounts so turned over to him by B. B. Davis, Esq., the sum of $589.34, and which sum is all the estate realized as turned over to your petitioner, excepting $20 and $30, which has been received from the sale of property, making a total sum $639.34, being the total cash value of assets received by this assignee of said estate.

" Respondent, further answering, says that he paid out of the sum of money collected on the accounts turned over to him by B. B. Davis, Esq., the bill of John Sexton & Com-

pany, the bill of Walker & Davis, for services rendered said estate, to the landlord for rent and claims which were a prior lien, as well as other large sums of money, as is more fully shown herein.

"This respondent, further answering, says that he turned over the property named and described in the mortgage of $17,500, on said Southern Hotel property, held by Louisa C. Clark, the property named and described in the mortgage of $1,500, on said property of said hotel company held by John Sexton; the property named and described in two mortgages held by Seipp Brewing Company, of Chicago, on the saloon property of said hotel company, as well as the property named and described in several smaller mortgages held by different persons on the property of said Southern Hotel Company, all of which property named and described in said mortgages was turned over to the respective mortgagees by the assignee and respondent herein under orders of this honorable court, and which property so turned over was the same property named and described in the inventory filed in this court, and which included all property of said estate described in said mortgages, excepting one Westinghouse engine, ten mantel brackets twenty fire extinguishers, three bedroom sets, one hundred electric lamps, and which property had been sold under orders of this court, and for which the assignee has received the sum of $59.20.

"Respondent, further answering, says that he has collected from the accounts turned over to him by the former assignee of said hotel company, and which accounts were inventories as assets of said hotel company, the sum of $539.34, and has received from the sale of property as herein stated the sum of $50.20, being a total sum of $639.84, this being the sum total realized on the assets of said Southern Hotel Company, by the assignee herein.

"Respondent, further answering, says that he has paid under the orders of this court to John Sexton & Co., $144.52; to Walker & Davis, the sum of $135, for professional services rendered assignee and attorneys for said estate; that he

has paid to M. J. Mize, Esq., the sum of $109.38, for special revenue taxes due the United States Government, 1894; that he has paid to the boiler inspector of the city of Chicago for license and inspection of the boilers of the said hotel company prior to July 18, 1894, the sum of $11; that he has paid for typewriting and stenographers for services rendered assignee in said estate the sum of $50; that he has paid for clerk hire and special services rendered assignee in administering said estate $100; that he paid B. B. Davis money advanced said estate while acting as assignee, $23; that he has paid to Henry Wells money advanced to said estate between July 13 and July 24, 1894, $5.10; paid gas bill incurred by B. B. Davis, while assignee, $21.34; paid laundry bill of said hotel company incurred by B. B. Davis, while assignee, $21.53; paid labor bills of said hotel company, incurred by B. B. Davis, while assignee, $58.45; paid for publication notices of the sale of said property of said hotel company $12; paid for postage for mailing assignment notices to creditors, 50 cents; paid for special notices of sale of property of said estate, $3.50; paid for filing inventory of the estate and list of creditors, $50; paid for services Lewis W. Parker, as commissioner in said estate and under orders of this court, the sum of $20; paid for attorney's fees for assignee, the sum of $200; paid for rent, E. A. Bacheldor, $750; paid for water tax for the time of B. B. Davis acting as assignee $14, and being the sum total of $1,331.87, so paid out by this respondent as assignee of said estate, and the additional sum of the $164 water tax to October 15, 1894, total $1,495.87.

"Respondent, further answering, says that at the time of his appointment as assignee in said cause, the court ordered that he pay to John Sexton & Co. $144.52, and to Walker & Davis $150, as well as the liabilities incurred by said Brodie B. Davis, as assignee; and has paid bills incurred by said Davis to Henry Wells, money advanced to said Davis while assignee and acting for said estate, $5.10; paid gas bill, $21.34; laundry bill, $21.58; labor bill of $58.45; paid Davis money advanced said estate, $23; being a total sum of $423.89, which was paid under direct orders of this court.

" Respondent, further answering, says that the total sum of money he has been directed to pay by the orders entered in this court exceeds the total estimated value of all the property it is claimed he has received.

" Respondent, further answering, says that he secured but $15 on the item mentioned in the said account as baggage held to secure accounts amounting to $282.54, and which baggage had not yet been sold when this order was entered.

" Respondent, further answering, says that he has sold no property, as is stated in said order, and has received no money excepting as herein stated, and that he has accounted for all the money he has received, as assignee of this estate, from property sold by order of this honorable court.

" Respondent, further answering, says that this cause has been on hearing at various times since pending in this court, and has been heard by the different judges who have at different times presided in this court, and that the order herein was entered as the finding of one judge, when in fact it has been heard at various times by different judges sitting in this court, and was not based on the knowledge and evidence heard of any one judge, and is not warranted by the evidence in the case, much of said order being without any foundation in fact, and having been entered without sufficient consideration and regard to its meaning toward the respondent.

" And this respondent, further answering, says that from time to time he has filed his reports in this court, showing the assets received and disbursed by him in said estate, and that it was well known to the creditors of said Southern Hotel Company, as well as to their attorneys, at the time of the assignment, that the assets of said estate would not be sufficient to pay expenses of administration of said estate and that they are not sufficient to pay expenses of administration, as the reports herein show, and to which reports no objections have been filed in this court.

" Respondent, further answering, says that he has no funds in his hands belonging to said estate, and that a hearing on this petition will demonstrate that fact, and that he can not

comply with the orders of the court herein entered, for the reasons herein stated.

" Therefore this respondent prays that said rule may be discharged.

W. C. CLARK,

Respondent and Assignee."

"STATE OF ILLINOIS, } ss.
    Cook County.      }

"Wallace C. Clark, being duly sworn, on oath says that he is the respondent named in the foregoing answer; that he has read the same, knows the contents of said answer, and that the facts therein stated are true.

W. C. CLARK."

" Subscribed and sworn to before me this 20th day of June, A. D. 1895.

JOHN J. ARNEY,

Notary Public."

Whereupon the following order was entered:

"IN THE MATTER OF THE      ⎫
SOUTHERN HOTEL COMPANY,    ⎬ Voluntary Assignment.
        Debtor,            ⎪
WALLACE C. CLARK, Assignee.⎭

" This day come again the parties thereto, in person and accompanied by counsel, and it appearing to the court from evidence offered in open court that said Wallace C. Clark, assignee as aforesaid, has failed to comply with the order of this court entered of record March 9, 1895, and that he is guilty of contempt of this court for failing to comply with said order of March 9, 1895, wherefore, the premises considered:

" It is ordered, adjudged and decreed by the court that said assignee, Wallace C. Clark, be and is hereby committed to the county jail of Cook county for a term of thirty days for his said failure to comply with the said order of March 9, 1895."

From which last mentioned order, this appeal is prosecuted.

WILBUR N. HORNER and JOHN J. ARNEY, attorneys for appellant, contended that the County Court is a court of

limited jurisdiction.   Propst v. Meadows, 13 Ill. 157; Von
Kettler v. Johnson, 57 Ill. 109, 117; Bostwick v. Skinner,
80 Ill. 147; People v. Cole, 84 Ill. 327; Langworthy v.
Baker, 23 Ill. 484; Ide v. Sayer, 30 Ill. App. 210.

If a court of limited jurisdiction does not proceed accord-
ing to the mode prescribed by the statute by which it is
created, its acts are nullities.   3 Phil. Ev. 987.

Such courts must not only act within the scope of their
jurisdiction, but it must appear on the face of their proceed-
ings that they so acted, or their proceedings are *coram non
judice* and void.   Kempe v. Kennedy, 5 Cranch (U. S.), 173;
Albee v. Ward, 8 Mass. 86; Smith v. Rice, 11 Mass. 507
Walbridge v. Hall, 3 Vt. 114; Williams v. Blunt, 2 Mass.
213; Turner v. Bank of North America, 4 Dallas (U. S.) 8;
City of Chicago v. Rock Island R. R. Co., 20 Ill. 286.

The powers to enforce obedience to an order of court for
the payment of money by imprisonment, is the highest
power known to the law, and a party seeking such remedy
can not be heard to complain, if he be required to strictly
pursue the law conferring authority thus to proceed.   Von
Kettler et al. v. Johnson, 57 Ill. 109.

While a court of chancery has power to commit for con-
tempt in not complying with its decree, it is not proper to
imprison for contempt in the failure of a party to pay a
money decree, unless the failure is willful.   Dinet v. Peo-
ple, 73 Ill. 183; Black v. People, 80 Ill. 14.

Errors in the execution of the original orders may be re-
viewed in an appeal from contempt proceedings.   Berkson,
v. The People, 154 Ill. 81.

Courts may consider rights of the parties in a civil con-
tempt.   Holbrook v. Ford, 153 Ill. 633.

Henry A. Hickman, attorney for appellees, contended
that the order herein can not be reviewed by appeal.
Haines v. The People, 97 Ill. 163; Randolph v. The People,
130 Ill. 536.

The power to punish for contempts is inherent in all
courts of justice, independent of statutes, and the exercise

of this power, resting in the sound discretion of the court, is not open to review. Clark v. People, Breese 340.

Mr. Justice Waterman delivered the opinion of the Court.

The order of March 9, 1895, finding, as it did, that the assignee had received certain funds and property, and ordering him to pay definite amounts to certain persons, was an appealable order, while a mere order of distribution of funds in his hands would not have been. Chi. Title & Trust Co. v. Caldwell, 53 Ill. App. 219; Stanton v. Andrews, 18 Ill. App. 552.

No appeal having been prosecuted from such order, it is insisted that upon the present appeal the court will review the entire proceeding and determine whether that order ought to have been made.

The court, upon an appeal from an order of contempt, civil in its nature, will determine not only whether the court had authority to make such order, but also the authority to make the order for disobedience of which the order of commitment or other punishment is made; and the court will also examine as to alleged errors that may have intervened in the execution of the original order, and in the supplementary proceedings which have resulted in the conviction of the respondent. Blake v. The People, 80 Ill. 13; Lester v. The People, 150 Ill. 408; Berkson v. The People, 154 Ill. 81.

The court has authority to order an assignee to pay only such funds as he has. The validity of an order to pay, depends upon its being one with which the assignee is, or is bound to be able to comply. The court, in the order of March 9th, did not find that at that time the assignee had anything in his hands, although it found him to have been guilty of conduct on account of which it might, perhaps, have ascertained and charged him with the value of property that he had, or should have received; and upon such finding might have ordered that he pay the sum so found. The court found in the order of March 9th, that the assignee had received in money the sum of $759.17, and had received

in accounts and other property enough to make the total $1,433.71; thereupon the court ordered him to pay to various parties sums amounting in the aggregate to $1,427.03; in other words, upon a finding that he had once received in cash $759.17, and in other property $674.59, it ordered him to pay out in cash the sum of $1,427.03. This, it is contended, the court had no authority to do.

The numerous findings of the order of March 9th result in an order to pay a sum which it is not found that the assignee has or has ever in any way, received, nor does it appear that the assignee has been in any manner charged with such sum.

The answer of the assignee to the rule to show cause, sets forth the payment by him, under direct orders of court, of the sum of $423.89, and payment for other expenses of administration, the items of which are given, of the sum of $1,071.91, making a total of $1,495.87.

A majority of the court are of the opinion, in respect to the order of March 9th, that the County Court then had authority to order the assignee to pay the sum of $1,427.03, because it had, in that proceeding, jurisdiction over the subject-matter, and the person of the assignee, and that the things here complained of are mere errors which, upon this appeal, can not be considered; the order of commitment of appellant to jail being collateral to the order for non-compliance with which such order of commitment was made.

The order of the County Court is therefore affirmed.