In re FELLERMAN et al.

(District Court, S. D. New York. November, 1906.)

1. CONTEMPT—PROCEEDINGS FOR PUNISHMENT—JOINT PROCEEDINGS.

A person charged with contempt not being entitled to a jury trial, the rules regarding indictments are not applicable to such proceedings, and two persons may be jointly proceeded against for contempt, although it consists in alleged false swearing before the court.

**2. SAME—ANSWER AS EVIDENCE.**

In a proceeding for contempt in a court of equity or bankruptcy, the answer of the respondent, though under oath, is not conclusive, and his denial of the contempt does not entitle him to a discharge.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Contempt, § 172.]

**3. BANKRUPTCY—FALSE SWEARING—PUNISHMENT BY CONTEMPT PROCEEDINGS.**

False swearing in bankruptcy proceedings, although a criminal offense, is also a contempt of the court and punishable as such in summary proceedings.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 385.]

**4. SAME—DEFEATING PURPOSE OF EXAMINATION.**

The duty imposed on bankrupts by Bankr. Act July 1, 1898, c. 541, § 7 (9), 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425], when present at the first meeting of their creditors to submit to an examination concerning the conduct of their business, their dealings with their creditors, etc., and under section 21a, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3430], to be examined on order of the court concerning their acts, conduct, or property, involves the duty of answering truthfully and as intelligently and connectedly and fully as their mental equipment will permit, and their failure to do so is a contempt of court.

**5. SAME.**

Bankrupts *held* guilty of contempt of the power of the court in failing to file schedules as required by the act and of the authority of the court in defeating or attempting to defeat justice by refusing to surrender their books of account, or to give any reasonable excuse for their disappearance, by swearing falsely on their examinations, and by persisting in giving vague, contradictory, and evasive answers to material inquiries.

In Bankruptcy. On proceedings to punish for contempt.

Abram I. Elkus, James N. Rosenberg, and Robert P. Levis, for the motion.

Leonard Bronner and Roger Foster, opposed.

HOUGH, District Judge. In and prior to August, 1905, the persons proceeded against (who are father and son) were in business in this city under the firm name of A. Fellerman & Sons. In the month named, an involuntary petition in bankruptcy having been filed against them, a receiver was appointed and such proceedings were subsequently had as that on November 9, 1905, a trustee was appointed. Prior to the appointment of a trustee both the bankrupts were examined in this court under section 21a,' c. 541, Act July 1, 1898, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3430], and further testimony upon the same points was taken at the first meeting of creditors.

The trustee now moves to punish the bankrupts and each of them for contempt (1) because, although duly ordered so to do by the decree of adjudication, they have never filed schedules as required by the act, nor, indeed, any schedules at all; (2) because they, and each of them, have failed to deliver either to their receiver or trustee the books of account of their joint business, and have failed to give any reasonable explanation for their failure so to do; (3) because in the progress of their several examinations they, and each of them, have testified with willful falsity; and (4) because they, and each of them, have repeatedly and continuously testified in their several examinations

in a vague, unsatisfactory, ambiguous, and contradictory manner, with the intention of obstructing the administration of justice and preventing the collection and distribution of their property and the discovery of the whereabouts of the same or any considerable portion thereof.

These charges are embodied in an order to show cause based upon certain affidavits and fortified by the records of this court containing the alleged obnoxious testimony and the order of adjudication. The order has been served personally upon each of the bankrupts, and required their personal attendance in court. Upon the adjourned return day neither of the defendants appeared, but they interposed by their counsel a joint document called an "answer," which is verified by the statement that "the same is true to the best of their knowledge, information, and belief," which verification is signed by their cross-marks. Abraham Fellerman, although foreign born, has been in this country for 37 years, and the record of his testimony shows him to be ready in English speech and obviously of quick apprehension. It is asserted, however, that he cannot write in English or any other language. Isidor Fellerman is native born, and has, by his own evidence, sufficient education to act as a traveling salesman and conduct the correspondence of his late firm. The answer contains no new matter, and in respect of the alleged falsity, etc., of the testimony, merely denies such falsity, vagueness, ambiguity, or the like. As to the failure to file schedules, it denies that any order therefor was made, and as to the question of books denies that the same were "in the bankrupts' premises upon the day of the filing of the petition," a fact which is not alleged and is immaterial; the question being whether they were within the bankrupts' control on that day.

Upon the issues thus framed, without any personal appearance or request for further examination, the bankrupts have elected to rest; and their counsel now assert that the proceeding is defective, in that it proceeds jointly against these two men, declaring that each is entitled to a "separate proceeding and separate petition," and to a jury trial, and, further, that the answer is "a complete justification of their conduct and shows that they have not been guilty of any intentional wrongdoing."

The first branch of this contention depends upon the proposition that, inasmuch as contempt of court is a criminal offense (New Orleans v. Steamship Co., 20 Wall. 392, 22 L. Ed. 354; Ex parte Swan, 150 U. S. 652, 14 Sup. Ct. 225, 37 L. Ed. 1107), therefore the rules of criminal proceedings must apply, and that, inasmuch as the two Fellermans could not be indicted jointly for perjury, neither can they be proceeded against together for a contempt involving false swearing.

It is certainly clear that one accused of contempt is not entitled to a jury trial (In re Debs, 158 U. S. 594, 15 Sup. Ct. 900, 39 L. Ed. 1092), and, indeed, "a contempt is sui generis. It may be considered as having the same meaning as a misdemeanor, but it differs from it, in this: that it is not indictable, but punishable summarily. No one has ever claimed that a party is entitled to a trial by jury in a proceeding for a contempt. It must, therefore, follow that the rules re-

garding indictments are not applicable to proceedings for contempt." In re Terry (C. C.) 37 Fed. 650.

The second branch of this argument—i. e., the incontrovertible nature of the answer—fails to recognize the fact that this proceeding is in a court of equity. It has been said that "one proceeded against as for a contempt has the right to purge himself if he can by his own oath, and that the common law is so rigid in this matter that it does not allow the sworn answer of the respondent to be controverted as to matter of fact by any other evidence." In re Pitman, Fed. Cas. No. 11,184; U. S. v. Dodge, Fed. Cas. No. 14,975. But the procedure here taken is in entire conformity with the practice of courts in equity as carefully considered in United States v. Anonymous (C. C.) 21 Fed. 761. "The court proceeds to investigate ex parte the alleged contempt, and being satisfied thereof directs that the guilty person stand committed, unless he shall, on the day assigned, show cause to the contrary. This order nisi being served, if no answer is made, the rule is made absolute, and the accused is then arrested and imprisoned according to its terms. If the accused appears, he is heard in any way that suits the convenience of the court, by an examination ore tenus, upon affidavits, or by propounding interrogatories. If he deny the contempt the court, either for itself or by reference to a master, ascertains the facts upon the proof, either party examining witnesses by affidavit or otherwise; but there never was in a court of equity as at common law any rule that the answer of the respondent to the interrogatories should be taken as true and he be discharged if he deny the contempt." Id., p. 767. See, also, U. S. v. Debs (C. C.) 64 Fed. 738.

These respondents have chosen to rest upon an answer which is in the main a mere statement of conclusions, which is, as to the order for schedules, false by the records of this court, and as to the nonsurrender of books of account attempts to make an issue not presented by the trustee's proceeding. And they have finally verified the whole in a method so unusual in this jurisdiction as to excite suspicion of the good faith of those who pursue it; for it cannot be suspected that they have not been ably advised.

Contempt of court involves two ideas—disregard of the power of the court and disregard of its authority. Disregard of power, in that lawful orders have not been obeyed; and disregard of authority, in that its jurisdiction to declare the law and ascertain and adjudicate the rights of the parties is hindered, prevented, or set at naught. Such conduct is an offense against the court as an organ of public justice, and may be rightfully punished on summary conviction, whether the act complained of be punishable as a crime on indictment or not. The offense may be double; so is the remedy and the punishment. Yates v. Lansing, 9 Johns. (N. Y.) 417, 6 Am. Dec. 290. It is, therefore, no answer to urge as to that part of this proceeding involving false swearing that perjury is an indictable offense. Perjury in the presence of the court is a contempt as old as the courts themselves. It is "undoubtedly a great contempt." Stockham v. French, 1 Bing. 365. It is a "gross piece of contempt." Chicago Directory Co. v. U. S. Directory Co. (C.

C.) 123 Fed. 194. It may be necessary to inquire whether the question put was relevant or material to the case or hearing. In re Judson, Fed. Cas. No. 7563; Ex parte Peck, Fed. Cas. No. 10,885. But once established that the investigation is upon a relevant subject it is not even necessary to prove the conduct of the defendants (as in a criminal trial) beyond a reasonable doubt, but only by a fair preponderance of evidence. Drakeford v. Adams, 98 Ga. 722, 25 S. E. 833. And in the numerous instances wherein bankrupts have been committed by the English courts for failure to give satisfactory answers to questions concerning their property the test of what is a satisfactory answer was said by Baron Alderson to be "whether a reasonable man would believe the story told" by the bankrupt. Ex parte Lord, 16 M. & W. 468.

It is, of course, true that the right to punish for contempt has been in many jurisdictions limited by statute. This is true in the state of New York. Of this Fromme v. Gray, 148 N. Y. 695, 43 N. E. 215, In re Ryan, 73 App. Div. 137, 77 N. Y. Supp. 132, and Bernheimer v. Kelleher, 31 Misc. 46, 64 N. Y. Supp. 409, are examples, and render these decisions of limited value in courts not controlled by the statutes of this state.

In order to render a witness guilty of contempt, it is not, however, necessary to allege or prove, either with the strictness of criminal practice or by laxer methods, particular instances of false swearing demonstrating the falsity by proving the truth. It is enough if the witness' conduct tends to bring the authority of the law and of the court engaged in the administration of the law into disrespect or disregard. It has never been doubted that a refusal to testify on the part of a witness or to give evidence on relevant questions is contempt. Taylor on Evidence (8th Ed.) 1264. And the matter is not mended by a refusal obviously willful to give intelligent, connected, and reasonable answers to questions fairly calling for the same.

These bankrupts when examined under section 21a were "competent witnesses under the laws of the state in which the proceedings were pending," and when examined at the first meeting of creditors it was the duty of each of them (section 7, subsec. 9, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425]) to submit to an examination concerning "his dealings with his creditors and other persons," and in respect of "all matters which may affect the administration and settlement of his estate," and the obligation to submit to the examination involved the duty of answering truthfully, and as intelligently, connectedly, and fully as mental equipment would permit. Both of these bankrupts are persons of obvious intelligence. Within a very short time, perhaps only a few hours, of the filing of the petition against them, they had assigned a large number of their open accounts of the face value of over $4,000 to one Stich; the consideration being a cash payment of a considerably less amount. The time when and the circumstances under which this transfer was made became, of course, vastly important, and upon the details of this transaction both bankrupts were examined. Isidor Fellerman on one occasion testified under oath that he did not recollect selling any accounts to Stich; that he

did not think he would recognize Stich if he saw him; that he could not be sure that he had ever met Stich, and he was certain that he had never been in Stich's place of business. Six months later he testified that he had met Stich; that he met him at the latter's office; that he had met him once or twice before calling at his office, and he specified the day on which he attended at that office. I find that Isidor Fellerman was guilty of willful false swearing in court when under examination pursuant to section 21a of the bankruptcy act, on September 29, 1905.

It being alleged that this device of the transfer of accounts immediately before bankruptcy was done by advice of counsel, Abraham Fellerman was (when examined under section 21a) closely questioned regarding the time when he saw his attorney and the time when he met Stich. On one occasion he testified that he left his store the day before the failure and consulted his attorney on that day for the first time, and that this occurred after 4 o'clock; that his attorney told him to go to see Stich, and he did so on the same day after having left his attorney's office. A week later he testified that he had seen Stich before he saw his attorney, and was perfectly certain of it, and this statement he repeated twice. On another occasion he declared that he never met his attorney and never saw him until after he had failed. I find that Abraham Fellerman was guilty of willful false swearing when under examination as a witness in court under section 21a on September 29, 1905. These are but illustrative instances of falsity. If they stood alone, they might be attributed to excitement or inadvertence, but they occur too frequently to be passed over.

In re Salkey, Fed. Cas. No. 12,253, arose under the act of 1867, and the court there adopted, under circumstances not dissimilar to these, the rule that the law which gives to the court in bankruptcy power to require an account from the bankrupt of the disposal of his estate and of his dealings with others in respect thereof "implies of itself a power to punish if a satisfactory account is not given." In Berkson v. People, etc., 154 Ill. 81, 39 N. E. 1079, a debtor, being under examination in respect of his property before a master in chancery, behaved in such a manner as to amount to an absolute refusal "to honestly and truthfully testify and submit to an examination concerning his property and the disposition he had made of it." The court remarked that no one could read the testimony "without being impressed by the feeling that the respondent by various evasions or by claiming not to remember is endeavoring to conceal and withhold from the receiver an amount of money. * * * We think he was properly adjudged guilty of a contempt." So in this case it would be idle to further specify the style of testimony offered by both father and son. No one can read the testimony of either without concluding that their answers were intentionally vague on points as to which no reasonable man can believe their recollection infirm; unintentionally contradictory when their attention was directed to points previously touched upon, and they did not remember the answers previously given; intentionally evasive when evasion and delay might serve to give time for considering the answer finally to be given, and revealing throughout a scheme of concealment

and prevarication accompanied by assumptions of ignorance impossible of belief; and all intended to weary investigation, exhaust the patience and the funds of petitioning creditors, and prevent the court from discovering what the law charges it to discover—the truth—concerning their acts, conduct, and property.

The bankrupts, and each of them are, in my opinion, guilty of contempt of the power of the court in refusing and neglecting to file schedules as required by the act, and of the authority of the court in defeating, or attempting to defeat, the ends of justice by (a) refusing to surrender their books of account or to give any reasonable explanation for their disappearance; (b) in falsely swearing as above set forth; and (c) in giving, and persisting in giving, vague, contradictory, and evasive answers to material inquiries as charged in the petition.

A commitment may issue against each of the bankrupts directing that they, and each of them, be imprisoned for the space of two months, and that they, and each of them, pay a fine of $250, each to stand committed until the same shall be discharged.