**In the Matter of the Estate of Emma Porter, Incompetent.**
**Citation Proceedings by First National Bank of Chicago, Conservator of the Estate of Emma Porter, Incompetent, Petitioner-Appellee, v. James A. Felder, Respondent-Appellant.**

Gen. No. 49,086.

First District, First Division.

October 21, 1963.

Rehearing denied November 13, 1963.

Sidney Z. Tepper and Theodore Sharf, of Chicago, for appellant.

Davis, Dietch & Ryan, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a citation proceeding in the estate of an incompetent. The Probate Court found respondent,

James A. Felder, had received $15,650 which belonged to the incompetent, and directed respondent to deposit that amount with the clerk of the Probate Court within 10 days. Upon failure to comply with the order, the court ordered respondent committed to the county jail until such time as he purged himself of the contempt, or until the expiration of six months. Respondent appeals.

Respondent contends (1) that the Probate Court erred in refusing to permit respondent to call his own handwriting expert; (2) that the trial court should have stayed the final citation orders until a $9,192.43 claim of respondent was adjudicated; (3) that the Probate Court has no jurisdiction in a citation proceeding, where the alleged indebtedness arose out of a debtor-creditor relationship; and (4) that before a respondent can be committed to jail for failure to comply with an order of the court, "there must be proof that he is able to comply with the order."

In December, 1961, Emma Porter, 82 years old, was adjudged to be an incompetent, and the First National Bank of Chicago was appointed conservator of her estate but not of her person. Citation proceedings were then commenced on January 8, 1962, against respondent, a licensed real estate broker. After some delay, he was served with the citation in February, 1962. The hearings commenced on May 21, 1962, and terminated on December 10, 1962, with the entry of the above orders. The record includes the testimony of respondent, the incompetent, a handwriting expert, several other witnesses, and numerous exhibits.

In substance, the record shows the respondent dealt with the incompetent for a number of years in the sale and purchase of apartment buildings, including the making of escrow deposits for her account, the payment of real estate taxes and the payment of attorney's fees. Respondent received two checks from

the incompetent totaling $21,000—one for $3,000, negotiated by him on August 22, 1961, and the other for $18,000, negotiated by him on September 21, 1961. The checks were payable to her order, and she endorsed them in blank. Respondent states he was given the checks to cash for her at his bank (Chatham) and to turn over the proceeds to her, to be used by her for a trip to New York.

At the first hearing, on May 21, 1962, respondent did not recall receiving any money from Mrs. Porter on the dates in question. At the second hearing, on June 6, 1962, he stated that he might have cashed two checks for $3,000 and $18,000. When he was shown the checks, with his endorsement thereon, he remembered that he had given her $2,000 of the $3,000, but her the money in full in both cases. He then remembered that he had given her $2,000 of the $3,000, but he had given her the entire $18,000 in cash on the date the check was negotiated. Upon cross-examination, he stated he had given her the money in one hundred and five hundred dollar bills.

On July 2, 1962, the assistant cashier of the Chatham Bank testified that on August 22, 1961, a check for $3,000 was received from James A. Felder. For this check, respondent received $500 in cash and two cashier's checks for $1500 and $1,000; that on September 21, 1961, the bank received from respondent a check for $18,000, and respondent received from the bank two cashier's checks, payable to his order, for $6,000 and $12,000, and no cash. Both checks, the $3,000 and the $18,000, were payable to the order of the incompetent and were endorsed by her and the respondent.

Respondent further testified on July 3, 1962, that he had no receipts. He stated, "The reason I didn't ask her for a receipt when I gave her less than the full amount of the $18,000 or $3,000 is that she is the

type of woman that if you asked her for a receipt it would be an insult to her. I in turn did not give her a receipt and that is the way we have been doing business over a period of years. . . . To my knowledge according to my books and records, I have no money belonging to Mrs. Porter. Whatever money she gave me was disbursed according to her direction and wishes and she is still indebted to me in a sizable amount of money." Thereafter, on July 12, 1962, the court entered an order finding that respondent had in his possession funds belonging to the incompetent in the sum of $19,150 and ordered respondent to turn it over to the conservator within 15 days.

Subsequently, on July 23, 1962, respondent filed a petition alleging that after the entry of the order of July 12, 1962, he found new evidence and requested a new trial and the vacation of the order of July 12, 1962. The newly found evidence consisted of three receipts allegedly signed by the incompetent, acknowledging receipt from the respondent of $1500 on September 28, 1961, $6,000 on October 2, 1961, and $6,000 on February 8, 1962, for which respondent claimed a credit of $13,500 against the money received by him. Respondent later testified that he found the three receipts on July 14, 1962, in the basement of a building owned by a friend, and that in April and May, 1962, his memory was very bad because of drugs administered for a stomach condition.

After giving respondent credit for expenditures claimed to have been made for the account of the incompetent, and rejecting the three receipts purportedly signed by the incompetent, the court on November 16, 1962, reduced the amount due from respondent to $15,650 and directed him to deposit this amount with the clerk of the Probate Court within 10 days. The court also rejected other claimed credits which respondent asserts resulted in the incompetent

being indebted to him for $9,192.43, and for which claimed credits he had also filed a claim against her estate on August 14, 1962.

On December 10, 1962, after the entry of a rule to show cause why he should not be held in contempt of court, the court found that respondent had not complied with the order to deposit, and that "no reasonable excuse has been forthcoming whereby this respondent has purged himself of contempt," and ordered respondent committed to the county jail "until such time as he purged himself of said contempt by the payment of $15,650 to the Clerk of this Court, or until the expiration of six months from the date hereof."

The contention of respondent that the court improperly refused the testimony of an additional handwriting expert arose out of the three receipts offered by respondent to buttress his testimony that he had given the incompetent a total of $13,500 in currency. The three receipts are all made on blank rent receipt forms, and each bears a signature alleged by respondent to be that of the incompetent. The incompetent testified and denies receiving the payments. She denied that the receipts bore her signature, and also denied signing any receipt at any time for respondent. A boarder in the home of the incompetent testified that three or four days after July 9, respondent came to the home of the incompetent and talked with her; "he wanted her to sign some papers and she wouldn't do it and said that she wouldn't sign any papers."

On September 7, 1962, by agreement, the court entered an order "that Linton Godown shall examine and testify as to the genuineness of the signatures and other features of said defendant's exhibits and the fees and costs of said handwriting expert shall be paid equally by the Conservator and said James A. Felder, and the further hearing of said citation proceedings is continued to October 11, 1962."

The handwriting expert, Linton Godown, testified in detail, with full cross-examination by respondent, that in his opinion the signatures on the three receipts were not those of the incompetent. At this time, respondent requested leave to call his own handwriting expert, who had given him a report that, in his opinion, the three receipts bore the genuine signatures of the incompetent. The court declined "to permit any additional testimony with regard to handwriting experts," because the handwriting expert who testified "was an expert agreed upon by both parties in this proceeding and that is the decision." Respondent contended that there was nothing in his stipulation or "in that order that barred us from calling any other handwriting experts. We didn't agree to be bound by what that handwriting expert was to say." The court then rejected a detailed offer of proof as to the testimony of respondent's handwriting expert.

■■ The court may undoubtedly limit the number of witnesses called as experts and the discretion of the trial court will not be interfered with except in case of abuse. Such discretion must not be exercised in an arbitrary manner, judged by the special facts in the case itself. (Geohegan v. Union El. R. Co., 266 Ill 482, 487, 107 NE 786 (1915).) However, "the discretion must be reasonably exercised, so as to deprive the parties of no material rights, and an abuse of it in this respect will be reversible error." West Skokie Drain. Dist. v. Dawson, 243 Ill 175, 180, 90 NE 377 (1909).

As contended by the respondent, the record does not disclose anything to bar him from offering any other handwriting expert, even though the court stated "it was not intended that additional experts be added." We also agree that the genuineness of the signatures of Mrs. Porter on the three exhibits was an important issue of fact, and that respondent's expert undoubtedly

would have testified favorably. Nevertheless, considering the "special facts of this case," the repeated inconsistent and completely contradictory testimony of respondent, his evasion of questions which persisted in many hearings over a period of six months, we are not persuaded that the expected favorable testimony of the additional expert would have required a different conclusion from that reached by the trial court—that the three exhibits should not be received into evidence. We find no abuse of discretion here. In a nonjury trial the court is the sole judge of the credibility of witnesses and of the weight to be given to the testimony of each of them and the reasonableness of the testimony of a witness considered in the light of all the evidence in the case.

■ In considering respondent's other contentions, we find no reason for the court to stay the citation proceedings until the claim of respondent is adjudicated. The claim was filed August 14, 1962, about four months before the commitment order. It contains the same items that were rejected, without prejudice, by the court on November 16, 1962, when the court entered the order denying the petition of respondent to vacate the order of July 12, 1962, and determined that "the amount owed by respondent to the Conservator is now $15,650." Respondent had ample time to seek an adjudication of his claim before the entry of the commitment order on December 10, 1962, but, as developed on oral argument, he took no steps at any time to have his claim set for hearing.

■ We believe the Probate Court properly exercised jurisdiction in the instant case under sections 183–185 of the Administration of Estates Act. As stated by the trial court: "This was not a matter of debtor-creditor relationship. It was not a matter of debt. There were moneys of this incompetent that were received by the respondent and were held by

him." Our Supreme Court in Keshner v. Keshner, 376 Ill 354 (1941) said (at p 359), 33 NE2d 877:

"Those sections of the Administration act which are referred to above are intended to provide a comprehensive and summary means for the discovery and recovery of assets, or *of their value if they have been converted.* The proceeding is purely statutory and is neither at law nor in equity. It bears the equitable aspects of a bill of discovery, while at the same time providing for an optional jury as at law on demand of the parties, where questions arise concerning claims of adverse title or interest, and this provision is valid. (Hansen v. Swartz, 345 Ill 609, [178 NE 246.]) The court is given power to determine all questions of adverse title or of right of property, and *it may enforce its judgments by execution or by proceedings in contempt.* The proceeding may be merely for the purpose of obtaining information with no adversary aspects, or it may develop into an out and out suit for the recovery of money." (Italics ours.)

Also, in Hire v. Hrudicka, 379 Ill 201 (1942), at p 206, 40 NE2d 63:

"No one has a vested right in the retention of money he has wrongfully converted to his own use nor in the procedure prescribed for its recovery by the proper person."

These pronouncements are in point in the instant case. ■ We find no merit in respondent's contention that before he can be adjudged in contempt and committed to jail, "there must be proof that he is able to comply with the order." We are not persuaded that in citation proceedings of this kind, where the court has determined that a respondent has wrongfully con-

verted to his own use funds which belong to an incompetent, there must be proof by the conservator that the respondent is able to comply with the order to turn over the funds. We agree that "our courts are reluctant to use this remedy to enforce compliance with a decree requiring the payment of money, and it has been held that this remedy should not be resorted to unless there are no other reasonable means of enforcement . . . ." LaRue v. LaRue, 341 Ill App 411, 416, 93 NE2d 823 (1950).

The record shows that respondent was called as a witness in his own behalf and testified regarding his assets, and that the most he could obtain "at the present time is approximately $500.00." Apparently the trial court was not moved by respondent's testimony that he was not able to comply with the order to deposit, nor are we. We find no abuse of discretion here.

For the reasons stated, we have concluded that the orders appealed from should be and they are hereby affirmed.

Affirmed.

ENGLISH, P. J. and BURMAN, J., concur.