*In re* ESTATE OF TITUS PALM, Incompetent—(ETHEL ANDERSON, Executor, Petitioner-Appellee, *v.* HELEN SMITH, Respondent-Appellant.)

(No. 55856;

First District (3rd Division)—March 22, 1973.

Eugene P. Meegan, of Chicago, for appellant.

James T. Holton, and Ackerman & Nichele, both of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This action involved a petition for citation, pursuant to Section 183(1) of the Probate Act, brought by the Estate of Titus Palm, an incompetent, to recover certain property. (Ill. Rev. Stat. 1965, ch. 3, par. 183.) The estate sought to recover 231 shares of American Telephone and Tele-

graph Company common stock and dividend checks which it charged had been concealed, converted or embezzled by the respondents. After a jury trial, a verdict was returned against one of the respondents, Helen Smith. The trial court entered judgment on the verdict, ordering Smith to turn over to the petitioner the proceeds of the stock sold in the amount of $13,398.00 and the amount of three dividend checks converted in the sum of $602.20. Upon Smith's failure to turn over the proceeds, the court entered a rule to show cause against her. At the same time, the court, by virtue of a settlement received by petitioner from certain other respondents in return for covenants not to sue, reduced the judgment turn-over order against respondent Helen Smith to $6,063.89. Upon her continued refusal to turn over the proceeds, respondent was found guilty of wilful contempt, was committed to jail, and this appeal follows.

Originally, the action was brought by the conservator of the incompetent's estate. Upon his death, the executor was substituted as petitioner. One of the respondents, Gustav Anderson, also died. The court appointed an attorney as special administrator of Anderson's estate.

At a pre-trial conference, petitioner negotiated a settlement with certain respondents. Under its terms, the petitioner was authorized to execute a covenant not to sue and an agreement to dismiss the pending suit against the respondent, American Telephone and Telegraph Company, and against the third party respondent, First National Bank of Chicago, in return for the sum of $1,201.91 and 150 shares of common stock of American Telephone and Telegraph Company.

The appellant, Helen Smith, contends on appeal that: (1) a remark made by the special administrator during the course of the trial and in the presence of the jury was so prejudicial as to require reversal; (2) the trial court incorrectly calculated the amount of the reduction of the judgment order; (3) the trial court improperly found her guilty of contempt; and, (4) the court abused its discretion in awarding costs and fees to the petitioner and special administrator under Section 41 of the Civil Practice Act.

In the instant case, both sides have set forth divergent statements of facts in their briefs. Appellant, however, in compiling the record on appeal, has failed to file a Report of Proceedings. We therefore are unable to determine the facts elicited at trial.

The amended petition, briefly summarized, alleged that for a short time prior to his adjudication as an incompetent, Titus Palm was a boarder in a rooming house operated by Helen Smith, and that Gustav Anderson was also a boarder. The petition further alleged that some time after Palm left the boarding house, and subsequent to his adjudica-

tion as an incompetent, 231 shares of telephone stock were transferred into the name of Gustav Anderson. Petitioner also alleged that the transfer bore the purported signature of Palm, but that the signature was not genuine. The petition went on to charge that the certificates were subsequently delivered to Helen Smith and that the shares were sold through a person named William Richard. According to the petition all the proceeds were eventually delivered to Helen Smith. The petition also charged that Palm's signature was forged to certain dividend checks.

Appellant filed an answer in which, while denying each allegation of the petition, she denied that she received any proceeds of the stock. She also filed sworn answers to a request for admission of facts in which she denied each and every act in the chain of conduct leading to the forgery, transfer and sale of stock, and the negotiation of the dividend checks. Appellant now concedes that she did in fact receive the stock proceeds, but maintains that they were received innocently.

■■ Appellant, in her first contention before this court, claims that a remark by the special administrator characterizing her as a "thief" was so improper and prejudicial as to require a reversal of the trial court. However, a determination of this claim would require a review of an issue of fact which review is precluded by appellant's failure to file a Report of Proceedings. Since all reasonable presumptions favor the action of the trial court, the burden is on the appellant to overcome such presumptions by affirmatively showing the errors charged. (*Husted v. Thompson-Hayward Chemical Co.*, 62 Ill.App.2d 287, 210 N.E.2d 614.) The absence of a Report of Proceedings makes it impossible to search for facts which might support appellant's argument.

■■ We next consider appellant's contention that she was not given full credit for the money and stock received by the petitioner from other respondents in return for the covenant not to sue. Petitioner had received 150 shares of telephone stock and $1,201.91 in return for that covenant. As a result, the judge reduced the judgment order against the appellant to $6,063.89, setting the value of each share of stock at $50.25. In setting that value, the trial court found that the stock in question had declined in value after the time of the conversion in 1967. The judge concluded that the decline in stock value should be borne by the respondent rather than by the estate. Appellant, however, maintains that the jury determined the total value of the stock proceeds as $13,-398.00, and that the court therefore was compelled to accept that value in reducing the judgment. In our view, the trial judge correctly decided that the decline in the value of the stock after the conversion should

be charged against appellant. The estate was not obtaining a double recovery. The value of the stock was easily ascertained, and the court did not abuse its discretion in fixing the amount of the judgment.

■■ Appellant has also urged that the trial court improperly found her guilty of contempt, and wrongfully committed her to jail. However, in this court, appellant apparently does not seriously contest appellee's position that the issue is moot since appellant was released from jail by operation of law. Moreover, where the court has determined that a person has wrongfully converted funds to her own use which belong to an incompetent, the court may enforce its judgment by execution or by proceedings in contempt. (*Keshner v. Keshner*, 376 Ill. 354, 33 N.E.2d 877.) And, in a case where a trial court had committed a respondent-appellant to jail for six months or until he complied with an order requiring the payment of money wrongfully converted, this court held that there was no duty on the conservator to prove that respondent was financially able to comply with the order to return the funds. (*In re Estate of Porter*, 43 Ill.App.2d 416, 193 N.E.2d 617.) In the instant case, commitment of appellant to jail for failure to return the stock proceeds which she wrongfully converted was not an abuse of the court's discretion.

We consider finally the propriety of the trial court's award of costs and attorneys' fees to both petitioner and the special administrator under Section 41 of the Civil Practice Act. At the conclusion of the jury trial, the petitioner and special administrator requested such an award. The trial court granted appellant's motion for a bill of particulars; a bill of particulars was furnished; and the court subsequently denied appellant's motion for a more detailed bill of particulars. After a hearing, the court awarded costs to the petitioner in the amount of $3,298.77, fees to petitioner's counsel in the amount of $8,000, and fees to the special administrator in the amount of $3,000.

■■ Section 41 of the Civil Practice Act gives a party the right to recover reasonable expenses and attorneys' fees from an offending party which fees and expenses were incurred by reason of the untrue pleadings, made without reasonable cause and not in good faith, filed by the offending party. The allowance of counsel fees and expenses under Section 41 is an attempt to penalize any litigant who pleads false matter and thereby puts an undue burden on an opponent to expend money in order for his attorney to disprove such pleadings. *Lipscomb v. Coppage*, 44 Ill.App.2d 430, 197 N.E.2d 48.

■■ We believe that the instant case is an appropriate one for the award of costs and attorneys' fees under Section 41. Appellant's pleadings, particularly her answer to the amended petition and her answers to

the request for facts, were untrue. Since she subsequently admitted receiving the proceeds of the stock sale, it would be inconceivable that her pleadings were properly made or that they were made in good faith. Consequently we hold that the trial court properly imposed costs and fees against appellant under Section 41.

The more difficult question, however, is whether the amounts imposed as sanctions by the trial court under Section 41 were proper. Although appellant argues that the sums awarded were excessive, we need not reach that issue because we agree with appellant that the hearing conducted by the trial court was inadequate to determine the amount of costs and fees properly due from appellant by virtue of her false pleadings.

In support of her request for costs and fees, the petitioner furnished a bill of particulars setting forth her litigation costs. The cost items included $1,123.30 for court reporting services at trial and at various discovery and evidence depositions; $1,347.00 for the services of an examiner of questioned documents; $341.60 for the expenses of one of petitioner's attorneys in connection with a trip to California to interview a witness; $164.16 for subpoena fees; $56.00 for death records; $86.00 for long distance calls to American Telephone and Telegraph in New York, to California regarding a witness investigation, and to Milwaukee regarding expert testimony; $203.10 for various copying services; $77.20 for service of process; $40.75 for copies and certifications of documents from the court clerk; and $28.00 for costs of translations of papers from a foreign language. The total costs were set at $3,467.52. The court awarded petitioner $3,298.20 in costs and, as far as we are able to determine, the record does not reflect which items were disallowed by the trial judge.

As to attorneys' fees, the bill of particulars requested $12,000 for attorneys James T. Holton and John B. Nichele for legal services rendered from the cause's inception in July, 1967, to the completion of the trial on July 31, 1970. It listed 57 court appearances, four discovery depositions, one evidence deposition and eight days of trial.

Petitioner also stated in the bill of particulars that she was informed that Ira B. Schultz, the special administrator of the estate of Gustav Anderson, would request fees under Section 41 in the amount of $5,000, $2,500 for services prior to trial, and $2,500 for services rendered during trial. After the hearing, the judge awarded $8,000 to petitioner for her counsels' fees, and $3,000 to the special administrator for fees.

■■■ Recovery under Section 41 is restricted to reasonable expenses and reasonable attorney's fees incurred by reason of the untrue pleadings. (*People ex rel. Henderson v. Redfern,* 104 Ill.App.2d 132, 243 N.E.2d

252.) The reasonableness of expenses is a matter of proof, both as to costs and as to attorney's fees, and the party sought to be charged therewith should be afforded an ample opportunity to cross-examine as to the reasonableness of the amounts claimed and, if necessary, to present evidence in rebuttal. *Adams v. Silfen,* 342 Ill.App. 415, 96 N.E.2d 628.

Although no report of proceedings of the instant trial has been furnished, a report of proceedings of the Section 41 hearing is a part of the record on appeal. It reveals that the hearing consisted entirely of a colloquy among the court and counsel for all parties. Through no fault of the conscientious trial judge, the colloquy reverted from appellant's attorney's objections to any award back to his objections to specific items of costs as being excessive, unnecessary or not incurred by reason of any pleadings in the case. Since we have determined that a Section 41 award of costs and fees is proper under the facts and circumstances of the case, we believe that an orderly hearing is necessary to establish which amounts were caused by the false pleadings, and the reasonableness of those fees and costs so established.

Accordingly, the judgment of the circuit court assessing damages against the appellant Helen Smith in the amount of $6,063.89 is affirmed and the order finding her in wilful contempt of court for failure to return the proceeds of the stock sale is also affirmed. That part of the order finding that petitioner, her attorneys and the special administrator were entitled to costs and fees under Section 41 is affirmed, but that part of the order fixing those amounts is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded with directions.

DEMPSEY, P. J., and McGLOON, J., concur.