COMET CASUALTY COMPANY, Plaintiff-Appellee, *v.* MARVIN I. SCHNEIDER, Defendant-Appellant.

First District (2nd Division)    No. 80-2334

Opinion filed July 28, 1981.

Michael Silverman, of Chicago, for appellant.

Robert J. Lifton, of Bilandic, Neistein, Richman, Hauslinger & Young, Ltd., of Chicago, and Norman B. Berger, for appellee.


Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant, Marvin I. Schneider, an attorney (defendant), appeals from an order entered July 22, 1980, assessing $3,250 in attorney's fees against him and in favor of plaintiff Comet Casualty Company (Comet) for his disregard of court orders requiring that he abide by the terms of a consent decree entered on November 27, 1978. He raises as issues whether: the circuit court retained jurisdiction to enforce the consent decree; and, the circuit court erred in assessing attorney's fees against him. For the reasons which follow, we affirm.

Defendant had served as counsel in approximately 1,500 to 1,800 lawsuits filed against Comet's insureds, as well as in other lawsuits involving uninsured motorists' and subrogation claims. Comet gave defendant its files relating to those claims together with a certain bank account to facilitate defendant's handling of litigated matters. On or about October 25, 1978, Comet notified defendant that he was discharged, and requested that he return all Comet's files relating to the lawsuits. Defendant refused to comply with Comet's request, and demanded payment of attorney's fees in excess of $100,000 before he would agree to release the files.

Comet then filed its verified complaint in chancery against defendant alleging that it was an Illinois insurance corporation authorized to issue insurance policies and that it retained Schneider in 1970 to serve as legal counsel to defend Comet's policyholders in liability lawsuits filed against them, and for various other legal services. The complaint sought a declaration that defendant was not entitled to hold Comet's files as an attorney's retaining lien and that such a lien claimed by defendant is null and void. The complaint also sought mandatory injunctions requiring defendant to: withdraw from pending lawsuits involving Comet; consent to substitution of attorneys designated by Comet; and return all files, dockets, checkbooks and other paraphernalia relating to defendant's representation of Comet in its claims adjustment and litigation activities.

Defendant filed a motion to dismiss the complaint, which was denied, and did not file any answer thereafter.

On November 27, 1978, a "consent decree and agreed order" (hereinafter consent decree) was entered, signed by counsel for both parties and the court in which it was ordered, *inter alia*, that: defendant execute a withdrawal and substitution of attorneys form for each pending case in which he had appeared for Comet or its insureds; all substitutions be completed on or before January 22, 1979; defendant deliver to Comet the content of his files, documents and records relating to each such case; Comet, for the purpose of securing any claim defendant may have against it for attorney's fees, deliver treasury bills or notes or certificates of deposit worth $125,000, to be held by the clerk of the circuit court, subject to further order of the court; each party execute all documents necessary to effectuate the provisions of the decree; and the cause "be * * * dismissed without prejudice * * * all matters in controversy for which said action was brought having been fully settled, compromised and adjourned."

Claiming that defendant wilfully failed to turn over the files or to withdraw, as agreed, from a majority of the cases in which he had appeared for Comet, on February 1, 1979, Comet moved for a rule to show cause why defendant should not be held in contempt of court. The court ordered defendant to complete the withdrawal process and turn over all files within 21 days. On August 17, 1979, Comet moved the court to compel defendant to turn over disposed files as well under his control. The court gave defendant 14 days to respond to the motion and on September 5, 1979, ordered him to deliver to the court all disposed files under his control. On September 14, 1979, Comet again moved for a rule to show cause and for sanctions, asserting defendant's noncompliance. A rule was entered and a hearing set for September 20, 1979. The clerk of the circuit court was directed to return to Comet all treasury notes which had been deposited with the clerk on December 15, 1978.

Additional counsel filed a general appearance on defendant's behalf and his motion to substitute attorneys was granted on September 20, 1979. Defendant's motion to vacate the rule-to-show-cause and sanction order was then denied, and he was again ordered to turn over his disposed files. He thereafter sought and obtained three continuances. Defendant was directed to appear in person before the court on October 30, 1979. Upon his failure to appear on that date, Comet was permitted to file a petition in support of its request that a body attachment issue against defendant for his failure to comply with the court's orders. The petition was filed, and the rule to show cause was returned on October 31, 1979. On November 8, 1979, defendant filed a petition to vacate the body attachment order and the return of the rule entered October 31, 1979, and requested an

"opportunity to be heard on these matters." The rule was continued several times, and on February 8, 1980, the body attachment order was stayed until March 6, 1980. Meanwhile, on January 7, 1980, defendant was again ordered to deliver to Comet the contents of any disposed files in his possession.

On April 24, 1980, Comet moved for attorney's fees and costs to be assessed against defendant for wilful and flagrant violation of court orders. Defendant filed an affidavit in opposition thereto on May 13, 1980. On July 22, 1980, pursuant to its April 24, 1980, motion, Comet was awarded $3,250 in attorney's fees. Defendant filed a notice of appeal from that order on July 23, 1980. On December 15, 1980, defendant moved to vacate all orders entered subsequent to November 27, 1978, alleging for the first time that they were entered without jurisdiction. The motion was denied on December 15, 1980. No appeal is taken from the latter order.

Relying on the language of the consent decree indicating a dismissal without prejudice, defendant asserts that the consent decree constituted a voluntary dismissal pursuant to section 52 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 52). He argues further that having thus agreed to dismiss the action, Comet may not now seek to enforce the decree, except by way of a new action. Defendant relies on the principle that a court loses jurisdiction of a cause 30 days after a final order, and is without jurisdiction to enter any orders subsequent to dismissal other than to vacate the dismissal and reinstate the cause pursuant to motion filed within thirty days after entry of judgment. Therefore, defendant concludes, since Comet's first motion of February 1, 1979, was not a request for reinstatement, and since it was filed more than 30 days after entry of the decree, the court was without jurisdiction to enter any orders pursuant thereto. See Ill. Rev. Stat. 1979, ch. 110, par. 68.3.

■■ ■ Defendant's interpretation of the import of the consent decree is unsupportably narrow. A decree must be interpreted in its entirety and should include consideration of other parts of the record, the pleadings and the issues. (*Dunaway v. Storm* (1975), 30 Ill. App. 3d 880, 334 N.E.2d 825; *Western Theological Seminary v. City of Evanston* (1962), 34 Ill. App. 2d 162, 180 N.E.2d 752; *Stone v. Baldwin* (1947), 331 Ill. App. 421, 73 N.E.2d 635.) The consent decree signed by the court in the present case expressly directs a series of performances of specific acts and creates unequivocal rights and obligations on the part of the parties after its entry. In doing so, the decree granted almost all the relief sought in Comet's verified complaint, which defendant failed to answer. The provisions of the consent decree were not self-executing, but were prospective and executory in terms of the relief granted, some of which were to take place beyond the 30-day period ordinarily considered jurisdictional. For example, in paragraph 1 thereof, defendant was required to execute a

withdrawal and substitution of attorneys form in each of Comet's pending cases within eight weeks of the day of the order. In paragraph 3, however, defendant was required to deliver to Comet or its new counsel, within three days from the date of the order, copies of his docket, logs, diaries and other records which concerned or referred to the status of each case. In paragraph 4, defendant was ordered to deliver, again within three days from the decree date, all funds on deposit in the special checking account utilized by defendant, together with checks, checkbooks and statement of accounts and other records. In paragraph 7 of the decree, Comet was required to deliver certain instruments to the clerk of the circuit court, "subject to further order of the court * * *." Although the court nowhere expressly retained jurisdiction to enforce the terms of the consent decree with respect thereto, in light of the provisions contained in the decree as a whole, dismissal of the action as provided for in paragraph 9 of the decree was ineluctably meant to be predicated upon compliance with all the decree's directives.

■■■ A valid consent decree is binding upon the parties and is enforceable as are other judgments. (*American Tar Products Co. v. Bradner Smith & Co.* (1925), 238 Ill. App. 151; *First National Bank v. Whitlock* (1945), 327 Ill. App. 127, 63 N.E.2d 659; *Beloit Culligan Soft Water Service, Inc. v. Culligan, Inc.* (7th Cir. 1959), 274 F.2d 29, 35.) A court may enforce its judgments through contempt proceedings. (See, *e.g., In re Estate of Palm* (1973), 11 Ill. App. 3d 24, 28, 295 N.E.2d 580.) Generally, a court has no power to modify, set aside or vacate a final decree 30 days after its rendition; however, it does retain jurisdiction until it has disposed of all matters before it. *Armour & Co. v. Mid-American Protein, Inc.* (1976), 37 Ill. App. 3d 75, 77, 344 N.E.2d 639; *Eggers v. Adler* (1928), 248 Ill. App. 118, 125.

■■ Heavy reliance is placed by defendant upon the fact that the underlying action was dismissed in the consent decree signed by the parties, which he claims thereby divested the trial court of further jurisdiction to enter any enforcement order in the cause after the passage of 30 days from the entry thereof. We disagree. No Illinois case directly on point has been cited by the parties; however, the precise issue was considered by the supreme court of Pennsylvania in *Advanced Management Research, Inc. v. Emanuel* (1970), 439 Pa. 385, 266 A.2d 673. There, a decree entered by the trial court incorporated a "Memorandum of Agreement" entered into by the parties, requiring them to perform certain acts and providing for dismissal of the underlying actions by designating them as settled, discontinued and ended as of November 13, 1968. The plaintiff there filed a petition on January 9, 1970, claiming that defendant had failed to comply with the terms of the settlement agreement and decree and sought entry of a rule to show cause why the November 13,

1968, agreement and decree should not be enforced. Defendant there appealed from an order enforcing the agreement and decree, claiming, among other things, as defendant Schneider claims in the instant case, that the trial court had lost jurisdiction to enforce the settlement and decree after the underlying actions had been dismissed and terminated. The Pennsylvania Supreme Court affirmed the trial court's enforcement orders, stating in part (439 Pa. 385, 391-92, 266 A.2d 673, 676):

"Appellant thus argues that by his partial compliance with the court's decree, i.e., marking the case settled and discontinued, he may thereby preclude the court from enforcing the remainder of the decree and, in effect, flaunt the chancellor's further directives. Both common sense and common law militate against such a result. * * * 'The jurisdiction of the court continues for the purpose of enforcing the decree. * * * Where there is an unimpeachable final decree, contemplating the performance of a series of acts, the proceedings to enforce compliance with that decree must be through that proceeding. * * *' Butler Co. v. P., H., B. and N. C. Ry. Co., 298 Pa. 347, 350-51, 148 A. 504, 505 (1929); Roth v. McClelland, 6 Watts 68 (1837).

Moreover, 'A party seeking to enforce an agreement compromising pending litigation is not at liberty to institute in any court any action he sees fit; especially is this true as here where the agreement has been in part performed. A compromise or settlement of litigation is always referable to the action or proceeding in the court where the compromise was effected; it is through that court the carrying out of the agreement should thereafter be controlled. Otherwise the compromise, instead of being an aid to litigation, would be only productive of litigation as a separate and additional impetus.' Melnick v. Binenstock, 318 Pa. 533, 536, 179 A. 77, 78 (1935)." (Emphasis in original.)

We find the foregoing reasoning persuasive and applicable to the facts before us. (See also Aro Corp. v. Allied Witan Co. (6th Cir. 1976), 531 F.2d 1368, 1371; Kelly v. Greer (3d Cir. 1964), 334 F.2d 434; Nieminen v. Pitzer (1978), 281 Or. 53, 573 P.2d 1227; Wenneker v. Frager (Mo. App. 1969), 448 S.W.2d 932; Brown v. Brown (1951), 135 W. Va. 579, 64 S.E.2d 620. Contra, In re Creamer's Estate (1971), 37 App. Div. 2d 33, 322 N.Y.S.2d 489.) We therefore hold that it was fully within the power of the trial court here to entertain enforcement proceedings after the dismissal and passage of 30 days from the rendition of the decree under the instant circumstances.

Contrary to defendant's position, moreover, the trial court's orders following entry of the consent decree did not constitute an improper alteration, modification or vacation of the decree; rather, they related to

its enforcement. (See *Anundson v. City of Chicago* (1970), 44 Ill. 2d 491, 496, 256 N.E.2d 1; *Kalman v. Bertacchi* (1980), 80 Ill. App. 3d 530, 533-34, 400 N.E.2d 507.) Thus, the cases relied upon by defendant in this context are inapposite since they do not concern the power of a court of equity to enforce its decrees.

■■ Assuming, *arguendo*, that jurisdiction had been lost after the passage of 30 days following the dismissal, the parties may be deemed to have revested the court with personal and subject matter jurisdiction by appearing voluntarily and participating in further proceedings inconsistent with the prior dismissal order. (*Ridgely v. Central Pipe Line Co.* (1951), 409 Ill. 46, 49, 97 N.E.2d 817; *Johnson v. Empire Mutual Insurance Co.* (1979), 70 Ill. App. 3d 780, 783, 388 N.E.2d 1042.) Loss of jurisdiction through the passage of time is a technical objection, which may be waived by voluntary participation of the parties. *Ridgely v. Central Pipe Line Co.* (1951), 409 Ill. 46, 50; *Faust v. Michael Reese Hospital & Medical Center* (1979), 79 Ill. App. 3d 69, 72, 398 N.E.2d 287; *Asumendi v. Fortman* (1978), 58 Ill. App. 3d 186, 190-91, 374 N.E.2d 20; *cf. Sears v. Sears*, 85 Ill. 2d 253, 422 N.E.2d 610.

In the instant case, the record discloses that defendant continued to appear and address the merits of this cause after the consent decree was entered on November 27, 1978. Additional counsel filed a general appearance for defendant in the contempt proceedings and, thereafter, substituted himself for previous defense counsel, some nine months after the consent decree and asserted dismissal was entered. The parties ignored the dismissal language of the decree and treated the case as ongoing and viable. During the course of the proceedings defendant's attorney in fact set forth, in petitions and affidavits submitted to the court, his reasons for failing to return the disputed documents. Defense counsel in oral argument on appeal conceded that they participated in questioning a witness on cross-examination relative to the amount of attorney's fees to be assessed. Defendant made no jurisdictional objection until December 15, 1980, after he had filed a notice of appeal from the order assessing attorney's fees against him. No argument was made until that date that the consent decree dismissal deprived the trial court of power to consider this further action. Accordingly, defendant's voluntary participation in the proceedings in a manner inconsistent with dismissal of the action served to revest the court with jurisdiction. *Ridgely v. Central Pipe Line Co.*; *Johnson v. Empire Mutual Ins. Co.*; *Faust v. Michael Reese Hospital & Medical Center*; *Asumendi v. Fortman.*

■■ Defendant next argues that the trial court erred in assessing attorney's fees against him absent a statutory provision or contract authorizing the award. The rule is otherwise. In *47th & State Currency Exchange, Inc. v.*

*B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 371 N.E.2d 294, the trial court found the defendant in contempt of court for disregarding its injunction and was ordered to pay a fine. Subsequent to the hearing on the rule to show cause, the plaintiff sought attorney's fees under section 41 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 41.) His motion was denied. The appellate court reversed, stating that the plaintiff's right to attorney's fees was not dependent on the Civil Practice Act since the court's power to punish for contempt is inherent and does not depend on a legislative grant. Thus, the court concluded that the assessment of attorney's fees may well be an appropriate remedy for civil contempt. We adhere to that reasoning here.

■■ For the first time defendant urges, in his reply brief, that he was never specifically found to be in contempt; was never served with the rule to show cause; and never appeared personally before the court to be found in contempt. We first observe that points not argued in the initial brief may be deemed waived and cannot be raised in a reply brief. (Ill. Rev. Stat. 1979, ch. 110A, par. 341(e)(7); *In re Estate of Trahey* (1975), 25 Ill. App. 3d 727, 732, 323 N.E.2d 813.) We elect, nevertheless, to consider these issues because they are answerable by reference to the record before us. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831.) As to defendant's assertion that nowhere in the record has he been specifically found in contempt, we note that although the July 22, 1980, order does not specifically use the word "contempt," it does state that the award was entered in response to Comet's motion for costs against defendant "for his wilful and flagrant violation of this court's orders, due notice having been served * * *." An order must be interpreted within the context of the motion or motions which accompany it. (*Ferracuti v. Ferracuti* (1975), 27 Ill. App. 3d 495, 498, 326 N.E.2d 556.) Here, the court's order was clearly a ruling pursuant to the pending rule to show cause why defendant should not be held in contempt, and the motions which arose therefrom. In the context of the rule and subsequent motions, the order unmistakably reflected that the court found defendant to have been in contempt.

■■ ■ Defendant's contention that the rule was never served on him is equally without merit. He filed a petition to vacate the return of the rule, referring direction to one of the bases upon which the rule was entered, which presupposes his knowledge of the contents of the rule and references to other orders therein made. Furthermore, having submitted himself to the court's jurisdiction and to the court's order represented by the consent decree, defendant is held to have notice of every step in the action until the entry of the finding of contempt. (*Berkson v. People* (1893), 51 Ill. App. 102, *aff'd* (1894), 154 Ill. 81, 39 N.E. 1079. See also *Armentrout v. Dondanville* (1979), 67 Ill. App. 3d 1021, 1027, 385 N.E.2d

829; *Head v. Wood* (1959), 20 Ill. App. 2d 97, 110-11, 155 N.E.2d 348.) Defendant's assertion that he was not personally before the trial court when he was found in contempt is also without merit since civil contempt proceedings do not require that a defendant be personally present. *Porter v. Alexenburg* (1947), 396 Ill. 57, 63, 71 N.E.2d 58.

For the foregoing reasons, we find no basis upon which to disturb the trial court's order and are obliged to affirm.

Affirmed.

STAMOS and PERLIN, JJ., concur.