2024 IL App (1st) 230331-U

No. 1-23-0331

Order filed February 16, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| AKRAM ZANAYED, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF PROTÉGÉ INVESTMENTS INCORPORATED, AN ILLINOIS CORPORATION, | ) ) ) ) ) | |
| Plaintiff-Appellee, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| v. | ) ) | No. 20 CH 05869 |
| MICHAEL P. MUFARREH, INDIVIDUALLY, BAMCO CONSTRUCTION, LLC, AN ILLINOIS LIMITED LIABILITY COMPANY, AND PROTÉGÉ INVESTMENTS, INCORPORATED, AN ILLINOIS CORPORATION AS A NOMINAL DEFENDANT, | ) ) ) ) ) ) | Honorable Caroline Kate Moreland, Judge Presiding. |
| Defendants-Appellants. | ) | |

JUSTICE LYLE delivered the judgment of the court.
Justice Mikva concurred in the judgment.
Justice Mitchell dissented, with opinion.

**ORDER**

¶ 1     *Held*: We affirm the judgment of the circuit court over defendant's contention that the circuit court lacked jurisdiction to enter an order enforcing the settlement agreement.

¶ 2      This appeal arises following the circuit court's entry of an order enforcing the settlement agreement between plaintiff, Akram Zanayed, and defendant, Michael Mufarreh. Mr. Zanayed and Mr. Mufarreh owned and operated a corporation that managed rental properties. Mr. Zanayed filed suit against Mr. Mufarreh alleging that he was improperly funneling funds from their jointly owned corporation to a company owned by Mr. Mufarreh. The parties eventually settled and the circuit court dismissed the action without prejudice, instructing the parties to provide status updates on the performance of the settlement terms.

¶ 3      More than 30 days after the dismissal, Mr. Zanayed filed a motion in the circuit court to enforce the settlement agreement. Mr. Mufarreh contended that the circuit court lacked jurisdiction to enforce the settlement agreement where it did not intend to retain jurisdiction and simply dismissed the case. The court found that it had jurisdiction to enforce the settlement agreement, found that Mr. Mufarreh was in breach, and ordered that Mr. Zanayed did not have to send payments to Mr. Mufarreh pursuant to the agreement until Mr. Mufarreh fulfilled his obligation to transfer real property.

¶ 4      On appeal, Mr. Mufarreh contends that the court erred in finding that it retained jurisdiction to enforce the settlement agreement where the court's dismissal order did not reflect an intent to retain jurisdiction. Mr. Mufarreh also asserts that the court did not have jurisdiction because the settlement agreement involved third parties who did not submit to the court's jurisdiction. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 5                                    I. BACKGROUND

¶ 6      Mr. Zanayed filed a complaint for injunctive and other relief on September 15, 2020. According to the complaint, Protégé Investments Incorporated (Protégé) owned and managed rental properties in the Chicago area. The management of Protégé was controlled by Mr. Zanayed,

Mr. Mufarreh, and Khalil Barbari. Mr. Mufarreh was also a member of BAMCO Construction, LLC (BAMCO), a Chicago-based construction company. Mr. Mufarreh contracted BAMCO to make repairs to certain Protégé properties. Mr. Zanayed alleged that, at Mr. Mufarreh's direction, BAMCO overcharged Protégé for the repairs and Mr. Mufarreh facilitated Protégé's payments to BAMCO.

¶ 7    Mr. Zanayed further alleged that after Mr. Mufarreh was removed as an officer of Protégé, he began "looting" Protégé's bank accounts and locked the other officers out of Protégé's management software. Mr. Zanayed raised claims of violations of the Illinois Business Corporation Act of 1983, conversion, breach of fiduciary duty, and unjust enrichment.

¶ 8    After further pleadings, on June 3, 2022, the parties entered into a settlement agreement. The settlement agreement provided that it was entered by and among Khalil Barbari, Mr. Mufarreh, Joseph Ortinau, Mr. Zanayed, Protégé, BAMCO, and numerous other parties who are not parties to this lawsuit. The settlement agreement resolved disputes among the parties in four separate lawsuits and one arbitration proceeding. The agreement provided for payments among the parties, including payments from Mr. Zanayed to Mr. Mufarreh and Mr. Ortinau, and required Mr. Mufarreh and Mr. Ortinau to divest themselves of their interest in Protégé and resign from their positions. The agreement also required Mr. Mufarreh to transfer his interest in certain real property to Mr. Zanayed and Protégé.

¶ 9    Following the settlement agreement, the trial court entered a written order dismissing the case without prejudice on June 21, 2022:

"This case coming before the Court by agreement of the parties, the parties having resolved all allegations, claims and defenses in this case pursuant to a settlement ("Settlement"), and the Court fully advised, IT IS HEREBY ORDERED:

Pursuant to the Settlement, this action, including all claims and defenses alleged by the parties, is hereby dismissed in its entirety without prejudice. The parties shall jointly advise the Court when certain of the Settlement terms have been performed, at which point, as provided for by the Settlement, the dismissal of this action shall become a dismissal with prejudice."

¶ 10    On December 1, 2022, Mr. Zanayed filed a motion to enforce the settlement agreement. Mr. Zanayed alleged that under the terms of the settlement agreement, he and Protégé were required to make certain payments to Mr. Mufarreh and Joseph Ortinau. Mr. Zanayed represented that he and Protégé had made all of the required payments to date. He maintained, however, that Mr. Mufarreh and Mr. Ortinau had failed to transfer real property to Protégé as required by the agreement. Mr. Zanayed contended that the transfer was necessary so that Protégé could refinance or sell the property to pay its obligations to Mr. Mufarreh and Mr. Ortinau. Mr. Zanayed asked the court to enforce the settlement agreement by requiring Mr. Mufarreh and Mr. Ortinau to make certain payments to third parties or by allowing Protégé and Mr. Zanayed to pay those obligations and deduct the amount paid from their balance under the settlement agreement. Mr. Zanayed also asked for an extension for his time to make payments pursuant to the settlement agreement and asked the court to order Mr. Mufarreh and Mr. Ortinau to reimburse Protégé for certain expenses incurred based on their failure to comply with the terms of the settlement agreement.

¶ 11    Mr. Mufarreh moved to dismiss the motion to enforce the settlement agreement for lack of jurisdiction. Mr. Mufarreh argued that the court lacked jurisdiction over the entities who were parties to the settlement agreement, but were not parties to the original action between Mr. Zanayed and Mr. Mufarreh, including Mr. Ortinau. Mr. Mufarreh maintained that these parties were not before the circuit court and never had been, and permitting the court to rewrite the settlement

agreement as Mr. Zanayed requested would "strip the third party entities" of their rights under the agreement. Mr. Mufarreh asserted that the court declined to retain jurisdiction over the settlement agreement by not explicitly stating in its dismissal order that it intended to retain jurisdiction.

¶ 12    In a written order, the circuit court found that it retained jurisdiction to enforce the terms of the settlement agreement. In reaching that determination, the court found that while presiding over three of the underlying litigations, it allowed several continuances for status on the settlement negotiations. The court acknowledged that its dismissal order did not address the issue of jurisdiction, but found that the order directed the parties to advise the court about certain terms of the settlement, which contemplated future conduct. The court reasoned, relying on *W.R. Grace & Co. v. Beker Industries, Inc.*, 128 Ill. App. 3d 215 (1984) and *McGoey v. Brace*, 2022 IL App (1st) 210322, that "where an order contemplates future conduct, it may be inferred that the Court intended to retain jurisdiction to enforce settlement terms." The court noted that in his prayer for relief, Mr. Zanayed sought to enforce the settlement agreement, which was directly contemplated by the court's dismissal order.

¶ 13    Following a hearing on the motion to enforce where Mr. Zanayed testified, the court found that there was no dispute that Mr. Mufarreh had breached the terms of the settlement agreement by failing to transfer the real property to Mr. Zanayed. The court noted that Mr. Zanayed had also breached the settlement agreement by failing to pay Mr. Mufarreh and Mr. Ortinau the amounts due, but found that this was not a defense to Mr. Mufarreh's breach because Mr. Zanayed could not make the payments without the transfer of the real property. The court allowed an extension of the deadline for Mr. Zanayed to pay Mr. Mufarreh the amount owed so that Mr. Mufarreh could transfer his interest in the real property to Mr. Zanayed and Protégé. The court determined that this extension of time did not constitute a change to the terms of the settlement agreement. The court

stayed Mr. Zanayed's obligation to pay Mr. Mufarreh the remaining amount until the real property was transferred and sold.

¶ 14    The court reiterated its oral ruling in a written order finding that Protégé and Mr. Zanayed's obligation to make payments under the settlement agreement were stayed until the real property was transferred to Protégé and Protégé had a reasonable opportunity to sell or refinance the property. The court set the matter for status on the issue of the transfer of the real property and continued the issues of indemnity and attorney fees to the next status date.

¶ 15    Following the court's order, Mr. Mufarreh filed an interlocutory appeal to this court pursuant to Illinois Supreme Court Rule 307(a) (eff. Nov. 1, 2017).

¶ 16                                II. ANALYSIS

¶ 17    On appeal, Mr. Mufarreh contends that the trial court erred in finding that it retained jurisdiction to enforce the settlement agreement. He maintains that when the trial court dismissed the case, it entered a "garden variety" dismissal order and did not intend to retain jurisdiction to enforce the settlement agreement. He asserts that the settlement agreement concerns 25 other parties who were not subject to the court's jurisdiction and the record is devoid of any evidence to support the court's finding of jurisdiction.

¶ 18                                A. Jurisdiction

¶ 19    Before we can address the merits of this appeal, we must first determine whether we have jurisdiction to do so. Mr. Mufarreh filed his notice of appeal pursuant to Illinois Supreme Court Rule 307(a) and in his brief clarifies his assertion that we have jurisdiction pursuant to Rule 307(a)(1). Rule 307 concerns interlocutory appeals as of right and subsection (a)(1) provides that a party may appeal to this court from an order of court "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017).

¶ 20    In his appellee brief, Mr. Zanayed responds that the order appealed from is not an injunction. He maintains that the order simply declares the rights and obligations of the parties under the settlement agreement. Specifically, Mr. Zanayed asserts that the trial court found that under the agreement, Mr. Mufarreh did not have the right to prevent Mr. Zanayed from fulfilling his obligation to pay by withholding his performance of his obligation to convey the real property. Mr. Zanayed contends that we therefore lack jurisdiction because the order was not a final order, the court did not enter a Rule 304(a) finding, and was not an appealable interlocutory order because it only declared the rights of the parties under the agreement.

¶ 21    In his reply brief, Mr. Mufarreh contends that trial court's order was an injunction because it stayed Mr. Zanayed's obligation to pay Mr. Mufarreh.

¶ 22    An injunction is a " 'prohibitive, equitable remedy issued or granted by a court at the suit of a party complainant, directed to a party defendant in the action, or to a party made a defendant for that purpose, forbidding the latter to do some act.' " *People v. Reynolds*, 274 Ill. App. 3d 696, 698 (1995) (quoting Black's Law Dictionary 705 (5th ed.1979)). Stated another way, an injunction is " 'a judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ, the most common sort of which operate as a restraint upon the party in the exercise of his real or supposed rights.' " *In re A Minor*, 127 Ill. 2d 247, 261 (1989) (quoting *Wangelin v. Goe*, 50 Ill. 459, 463 (1869)). To determine whether an order is an injunction, we consider its substance, rather than its form. *TIG Insurance Co. v. Canel*, 389 Ill. App. 3d 366, 371 (2009). Illinois courts have a policy of broadly construing the meaning of the term "injunction." *In re A Minor*, 127 Ill. 2d at 261.

¶ 23    In contrast, declaratory judgments are statutory in nature and section 2-701 of the Illinois Code of Civil Procedure provides that:

"The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation, or of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested." 735 ILCS 5/2-701(a) (West 2022).

A declaratory judgment allows "the court to take hold of a controversy one step sooner than normally—that is, after the dispute has arisen, but before steps are taken which give rise to claims for damages or other relief. The parties to the dispute can then learn the consequences of their action before acting." (Internal quotation marks omitted). *Beahringer v. Page*, 204 Ill. 2d 363, 372-73 (2003) (quoting *Kaske v. City of Rockford*, 96 Ill. 2d 298, 306 (1983)). "The declaratory judgment procedure was designed to settle and fix rights before there has been an irrevocable change in the position of the parties that will jeopardize their respective claims of right." *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 174 (1995)).

¶ 24    In this case, the trial court's order was not a declaratory judgment. The court did not merely declare the rights of the parties, but specifically found that both parties had breached the settlement agreement, which gave rise to claims for damages or other relief. The court therefore ordered Mr. Mufarreh to transfer the real property to Mr. Zanayed and determined that Mr. Zanayed did not have to pay Mr. Mufarreh until after the transfer had been completed, thus staying his obligation to pay. A court's order has the effect of an injunction where it requires a party to transfer real property. *In re Marriage of Roman-Kroczek and Kroczek*, 2021 IL App (1st) 210613, ¶ 18. Similarly, the portion of the order staying Mr. Zanayed's obligation to pay was an injunction because it directed him to refrain from doing a particular thing. *In re A Minor*, 127 Ill. 2d at 261.

It also infringed on Mr. Mufarreh's "right" to receive payments under the agreement. *Id.* Accordingly, we find that we have jurisdiction to consider the merits of this appeal under Rule 307(a)(1).

¶ 25                    B. The Trial Court's Jurisdiction

¶ 26    Turning to the merits, Mr. Mufarreh contends that the trial court erred in finding that it had jurisdiction to enforce the settlement agreement. He asserts that the trial court did not have the authority to enter an order that affected the rights of third parties who were not parties to the underlying litigation, such as Mr. Ortinau. He maintains that the trial court's dismissal without prejudice terminated the litigation between the parties and if Mr. Zanayed sought to enforce the terms of the agreement, he should have done so by initiating a new lawsuit.

¶ 27                    1. *Standard of Review*

¶ 28    At the outset, we observe that the parties disagree as to the standard of review to be applied in this case. Mr. Mufarreh contends that the issue of whether a trial court retained jurisdiction to enforce the terms of the settlement agreement is a question of law, which we review *de novo*. Mr. Zanayed asserts, however, that we should apply an abuse of discretion standard of review because the issue is the trial court's interpretation of its own order.

¶ 29    We agree with Mr. Zanayed. The question raised in this case is whether the trial court intended to retain jurisdiction to enforce the settlement agreement by its order of June 21, 2022. The trial court is in the best position to interpret its own orders and we will not reverse a court's interpretation of its own order unless the record shows an abuse of discretion. *Board of Trustees of Community College District No. 508 v. Rosewell*, 262 Ill. App. 3d 938, 965 (1992). "Even if the orders are unclear on review, deference to the court's interpretation of its order is warranted." *Id.* An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful, or unreasonable

or where no reasonable person would take the view adopted by the trial court. *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 30                                    2. *The Trial Court's Intent*

¶ 31     Mr. Mufarreh's assertion that the trial court did not retain jurisdiction to enforce the terms of the settlement agreement rests on three primary arguments: (1) There were multiple parties to the settlement agreement who were not part of the underlying litigation, and the trial court lacked personal jurisdiction over those parties to enter an order affecting their rights under the settlement agreement; (2) The court's dismissal order does not show that the court intended to retain jurisdiction after dismissal; and (3) the record does not contain evidence of the trial court's intent to retain jurisdiction.

¶ 32     We will first address Mr. Mufarreh's second and third contentions. "As there exists a strong policy in favor of settlement and the resulting avoidance of costly and time-consuming litigation, courts retain inherent power to enforce settlement agreements reached in litigation pending before them." *Security Pacific Financial Services v. Jefferson*, 259 Ill. App. 3d 914, 919 (1994). "The court's jurisdiction to enforce a settlement agreement does not depend on the use of 'magic words' to retain jurisdiction." *McGoey*, 2022 IL App (1st) 210322, ¶ 21. Instead, we look to the trial court's intent. *Id.*

¶ 33     In this case, the court did not expressly state in its dismissal order that it retained jurisdiction to enforce the agreement. The record shows, however, that the trial court continued the underlying litigation on several occasions for status on the settlement negotiations. Further, the court dismissed the action "[p]ursuant to the Settlement." In doing so, "the trial court expressly made the dismissal contingent on the terms of the agreement," which "incorporated the agreement into the order." *Director of Insurance ex rel. State v. A & A Midwest Rebuilders, Inc.*, 383 Ill. App.

3d 721, 725 (2008). The order also expressly contemplated "future conduct" in that it directed the parties to jointly advise the court of when certain settlement terms had been performed. As the trial court recognized in finding that it retained jurisdiction, "where an order contemplates future conduct, it may be inferred that the court retained jurisdiction to enforce it." *Id.* at 723. In addition, because the judgment contemplated future performance by the parties, the court was entitled to retain jurisdiction to enforce the order after the lapse of the 30-day period. *Brigando v. Republic Steel Corp.*, 180 Ill. App. 3d 1016, 1020 (1989) (citing *Village of Gilberts v. Holiday Park Corp.*, 150 Ill. App. 3d 932 (1986); *Adam–Martin Construction Co. v. Brandon Partnership*, 135 Ill. App. 3d 324 (1985)).

¶ 34    The record also shows that Mr. Zanayed had partly fulfilled his obligations under the agreement, but Mr. Mufarreh had declined to perform his. This court has found that the "the circuit court was empowered to entertain enforcement proceedings after the dismissal of a lawsuit by entry of a consent decree under which the parties to the agreement contemplated further performance of certain acts and had partly performed them, but one of the parties declined to fulfill his performance as agreed." *W.R. Grace*, 128 Ill. App. 3d at 219 (citing *Comet Casualty Co. v. Schneider*, 98 Ill. App. 3d 786 (1981)). In such circumstances, the trial court's orders do not constitute an improper alteration, modification or vacation of the decree, but solely relate to its enforcement. *Comet*, 98 Ill. App. 3d at 791-92. Although the trial court loses jurisdiction to amend a judgment after 30 days from entry, it retains indefinite jurisdiction to enforce the judgment." *In re Marriage of Allen*, 343 Ill. App. 3d 410, 412 (2003).

¶ 35    We find the cases of *Brigando* and *Kempa v. Murphy*, 260 Ill. App. 3d 701 (1994), cited by Mr. Mufarreh, distinguishable. In both cases, this court was presented with the question of whether a trial court had retained jurisdiction to enforce a settlement agreement. In *Brigando*, the

parties reached a settlement and the trial court entered a "form dismissal" consisting of "generalized language." *Brigando*, 180 Ill. App. 3d at 1017. The order provided:

> "This cause coming to be heard upon the regular call of cases for pre-trial, and it appearing to the court that the said cause has been settled by agreement of the parties.
>
> IT IS HEREBY ORDERED, adjudged and decreed that the above entitled cause be and the same is hereby dismissed with prejudice—and without costs." *Id.* at 1017-18.

Nine months later, the plaintiff brought a motion to "enforce" the trial court's dismissal order contending that the third-party defendant had failed to pay him as required under the settlement agreement. *Id.* at 1018. After a hearing, the trial court entered an order that its dismissal order should be " 'enforced' " against the parties. *Id.* After the third-party defendant still refused to pay the plaintiff, the plaintiff filed a second motion to enforce the dismissal order. *Id.* The third-party defendant argued that he had not paid anything because the court's dismissal order did not order him to pay anything. *Id.* The trial court disagreed, finding that the terms of the settlement agreement were undisputed, again ordered the third-party defendant to pay the plaintiff, and specifically incorporated language into its order ordering the third-party defendant to pay. *Id.* at 1018-19.

¶ 36    On appeal, the third-party defendant contended, *inter alia*, that the trial court did not have jurisdiction to enter either order "enforcing" its dismissal order. *Id.* at 1019. This court recognized that a trial court generally has 30 days after entering a final judgment order to amend, modify, rehear, retry, vacate, or grant other relief. *Id.* at 1020. The court noted that there were exceptions to this general rule, such as where the trial court entered a consent judgment or where the judgment "contemplates or orders future performance by the parties." *Id.*

¶ 37　In determining whether the trial court had jurisdiction to enter the enforcement orders, this court first looked to the "scope" of the dismissal order. *Id.* The *Brigando* court determined that the scope of the order was limited solely to the dismissal of the claims and there were no "special circumstances" that could have extended the court's jurisdiction to "enforce" the order. *Id.* at 1021. The court observed that the order did not include any terms of the alleged oral settlement agreement, and only referenced the settlement agreement to note the reason for the dismissal. *Id.* The court determined that the trial court simply intended to "dispose of the litigation between the parties, and nothing in that order or in the record suggests that the court intended to do otherwise." *Id.* The court concluded that the trial court therefore lost jurisdiction over the matter 30 days after the entry of the dismissal order and did not have jurisdiction to enter the enforcement orders. *Id.*

¶ 38　Mr. Mufarreh contends that like the dismissal order in *Brigando*, the trial court in this case solely intended to dispose of the litigation and nothing more. In contrast to the dismissal order in *Brigando*, however, the dismissal order in this case contemplated future conduct by the parties, specifically with regard to the settlement agreement. The order directed the parties to advise the court about the performance of certain terms under the settlement agreement and provided that the court's dismissal without prejudice would become a dismissal with prejudice when those terms were completed, "as provided for by the Settlement." Although we observe, under Illinois precedent, that there is no procedural effect to the trial court's use of the phrases "with prejudice" or "without prejudice" in terms of finality of the court's judgment (see, *e.g.*, *Schal Bovis, Inc. v. Casualty Insurance Co.*, 314 Ill. App. 3d 562, 568 (1999)), such a distinction may be meaningful in determining the trial court's intent. In this case, the court's choice of language in its order reflected its intent was not simply to dismiss the action and nothing more. The court instead intended to oversee the parties' compliance with the agreement. Nonetheless, we urge the trial

court to not rely on the distinction between dismissals "with prejudice" and "without prejudice" where such language is not dispositive under Illinois law, even if it is under federal law. See *A & A Midwest Rebuilders, Inc.*, 383 Ill. App. 3d at 726.

¶ 39    Similar to *Brigando*, , in *Kempa*, the trial court's dismissal order stated:

" 'This cause coming on to be heard on this date upon the Stipulation for Dismissal with prejudice filed herein by the above plaintiff[s] and above named defendant[s], and the Court having examined said Stipulation and being fully advised in the premises, finds that this cause of action has been fully compromised and settled and the parties have stipulated and agreed to dismissal of the complaint with prejudice, and that the court further finds that all costs have been paid.

IT IS THEREFORE ORDERED that the complaint of plaintiff[s] against the defendant[s] be and the same is hereby dismissed with prejudice.' " *Kempa*, 260 Ill. App. 3d at 703.

The *Kempa* court relied on *Brigando* in finding that the trial court failed to retain jurisdiction to enforce the terms of the settlement agreement where the dismissal order neither incorporated the terms of the settlement agreement, ordered future conduct, or specifically retained jurisdiction. *Id.* at 705-06. The *Kempa* court concluded that, "[a]s in *Brigando*, nothing in the record suggests that the court intended to do anything other than terminate the litigation between the parties." *Id.* at 706.

¶ 40    As discussed, the trial court's order in this case ordered future conduct related to the settlement agreement and it is apparent that the court did not solely intend to terminate the litigation between the parties. The court's dismissal order shows contemplation of overseeing the parties' compliance with the settlement terms.

¶ 41    Finally, we reject Mr. Mufarreh's contention that the trial court lacked jurisdiction to enter an order enforcing the settlement agreement because the order affected the rights of third parties who were not parties to the litigation between Mr. Zanayed and Mr. Mufarreh. Our supreme court has recognized that "a party may 'object to personal jurisdiction or improper service of process only on behalf of himself or herself, since the objection may be waived.' " *In re M.W.*, 232 Ill. 2d 408, 427 (2009) (quoting *Fanslow v. Northern Trust Co.*, 299 Ill. App. 3d 21, 30 (1998)). Therefore, Mr. Mufarreh cannot raise an objection challenging the trial court's personal jurisdictional on behalf of another party. In any event, the trial court's order did not affect any rights of these third parties by modifying or altering the agreement and merely ordered Mr. Mufarreh to comply with the terms of the settlement agreement as written. *Comet*, 98 Ill. App. 3d at 791-92.

¶ 42                                      III. CONCLUSION

¶ 43    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 44    Affirmed.

¶ 45    PRESIDING JUSTICE MITCHELL, dissenting:

¶ 46    The disposition of this case is controlled by two bedrock jurisdictional limitations:

Rule 1:    Absent an express retention of jurisdiction,[1] the circuit court loses jurisdiction over a case 30 days after entry of a final judgment. See 735 ILCS 5/2-1301(e) (West 2022); Ill. Sup. Ct. R. 274 (eff. July 1, 2019); 303 (eff. July 1, 2017).

Rule 2:    The circuit court lacks jurisdiction to modify a final judgment more than 30 days after entry of the judgement absent the filing of a timely post judgment motion. 735 ILCS 5/2-1202, 2-1203 (West 2022).

---

[1] See *American Society of Lubrication Engineers v. Roetheli*, 249 Ill. App. 3d 1038, 1042 (1993) (explaining that a court maintains jurisdiction after 30 days only where "the court explicitly retained jurisdiction under its order dismissing the case."); see also *Brigando v. Republic Steel Corp.*, 180 Ill. App. 3d 1016, 1020 (1989).

¶ 47    There was no expression in the June 21, 2022, order to retain jurisdiction for enforcement:

> "Pursuant to the Settlement, this action, including all claims and defenses alleged by the parties, is hereby dismissed in its entirety without prejudice. The parties shall jointly advise the Court when certain of the Settlement terms have been performed, at which point as provided by the Settlement, the dismissal of this action shall become a dismissal with prejudice."

¶ 48    The June 21 order was a final order that disposed of all claims and defenses in their entirety. The order left nothing to be done. The distinction between "with prejudice" and "without prejudice" is meaningless in Illinois practice when it comes to measuring finality. *Director of Insurance ex rel. State v. A & A Midwest Rebuilders, Inc.*, 383 Ill. App. 3d 721, 722-23, 726 (2008).

¶ 49    The express temporal limitation in the June 21 order is not performance but the modification of the dismissal from one without prejudice to one with prejudice. Again, Illinois law is clear: 30 days after the entry of a final order, the trial court loses jurisdiction to modify that final order absent the filing of a timely post-judgment motion. 735 ILCS 5/2-1202; 5/2-1203. That is so even when the order is designated "without prejudice" because (unlike federal practice)[2] that designation does not affect finality. By its plain terms, the June 21 order contemplated the trial court's involvement for a period of no more than 30 days absent a timely post judgment motion.

---

[2] A dismissal without prejudice in federal court renders an order nonfinal and that is how a district court retains jurisdiction to enforce a settlement. See *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002); *Jessup v. Luther*, 277 F.3d 926, 929 (7th Cir. 2002). That is not the rule under Illinois law. *A & A Midwest Rebuilders, Inc.*, 383 Ill. App. 3d at 722-23, 726 (2008).

¶ 50    In my view, the trial court lost jurisdiction over the case 30 days after entering the June 21, 2022, order and therefore could not entertain the motion to enforce brought 6 months later. Here, the complaining party's remedy was to file a breach of contract action for breach of the settlement agreement or to file a petition to vacate the dismissal under section 2-1401 and seek to reinstate the dismissed action. 735 ILCS 5/2-1401 (West Supp. 2024).

¶ 51    For these reasons, I respectfully dissent.