2026 IL App (1st) 240744-U

No. 1-24-0744

Order filed May 14, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| AKRAM ZANAYED, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF PROTÉGÉ INVESTMENTS INCORPORATED, AN ILLINOIS CORPORATION, | ) ) ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal from the Circuit Court of Cook County. |
| MICHAEL P. MUFARREH, INDIVIDUALLY, BAMCO CONSTRUCTION, LLC, AN ILLINOIS LIMITED LIABILITY COMPANY, AND PROTÉGÉ INVESTMENTS, INCORPORATED, AN ILLINOIS CORPORATION AS A NOMINAL DEFENDANT, | ) ) ) ) ) ) | No. 20 CH 05869 Honorable Caroline Kate Moreland, Judge Presiding. |
| Defendants. | ) ) | |
| (Michael P. Mufarreh | ) ) | |
| Appellant.) | ) | |

_____

JUSTICE LYLE delivered the judgment of the court.
Justice Mikva concurred in the judgment.
Justice Mitchell dissented, with opinion.

**ORDER**

¶ 1    *Held*:   We affirm the judgment of the trial court over defendant's contention that the court erred in enforcing the settlement agreement and in awarding plaintiff attorney fees.

¶ 2    This appeal arises following the trial court's entry of an order granting a second motion to enforce a settlement agreement between plaintiff, Akram Zanayed, individually and derivatively on behalf of Protégé Investments Incorporated (Protégé), and defendant, Michael Mufarreh. Mr. Zanayed and Mr. Mufarreh owned and operated a corporation that managed rental properties. Mr. Zanayed filed suit against Mr. Mufarreh alleging that he was improperly funneling funds from their jointly owned corporation to a company owned by Mr. Mufarreh. The parties eventually settled and the trial court dismissed the action without prejudice.

¶ 3    Mr. Zanayed subsequently filed a motion in the trial court to enforce the settlement agreement. Mr. Mufarreh contended that the trial court lacked jurisdiction to enforce the settlement agreement. The court found that it had jurisdiction to enforce the settlement agreement, found that Mr. Mufarreh was in breach, and ordered that Mr. Zanayed did not have to send payments to Mr. Mufarreh pursuant to the agreement until Mr. Mufarreh fulfilled his obligation to transfer real property. This court affirmed the trial court's order on appeal over Mr. Mufarreh's contention that the trial court lacked jurisdiction to enforce the settlement agreement. *Zanayed v. Mufarreh*, 2024 IL App (1st) 230331-U.

¶ 4    While that appeal was pending, Mr. Zanayed filed in the trial court a second motion to enforce the settlement agreement. The trial court again granted the motion, ordering Mr. Mufarreh to transfer the real property so that Mr. Zanayed could use the proceeds from the sale of the property to fulfill his obligation under the settlement agreement to make payments to Mr. Mufarreh. The court ordered that after Mr. Mufarreh transferred the real property, Mr. Zanayed and Protégé were required to sell or refinance the real property and deposit the proceeds into a title

indemnity account to insure the title company against a judgment lien on the property. The court also awarded Mr. Zanayed attorney fees as the "prevailing party" pursuant the settlement agreement. Mr. Mufarreh now appeals, contending that the trial court erred in requiring him to transfer the real property before receiving payments under the settlement agreement and erred in requiring him to establish an escrow account to secure the judgment lien against the real property. He also asserts that the court erred in awarding Mr. Zanayed attorney fees. For the reasons that follow, we affirm the judgment of the trial court.

¶ 5                                    I. BACKGROUND

¶ 6    In order to properly address the arguments raised on appeal, it is necessary to set forth the circumstances giving rise to the first appeal in this matter. On September 15, 2020, Mr. Zanayed filed a complaint for injunctive and other relief, naming, among others, Mr. Mufarreh as a defendant. According to the complaint, Protégé owned and managed rental properties in the Chicago area. The management of Protégé was controlled by Mr. Zanayed, Mr. Mufarreh, and Khalil Barbari. Mr. Mufarreh was also a member of BAMCO Construction, LLC (BAMCO), a Chicago-based construction company. Mr. Mufarreh contracted BAMCO to make repairs to certain Protégé properties. Mr. Zanayed alleged that, at Mr. Mufarreh's direction, BAMCO overcharged Protégé for the repairs and Mr. Mufarreh facilitated Protégé's payments to BAMCO.

¶ 7    Mr. Zanayed further alleged that after Mr. Mufarreh was removed as an officer of Protégé, he began 'looting' Protégé's bank accounts and locked the other officers out of Protégé's management software. Mr. Zanayed raised claims of violations of the Illinois Business Corporation Act of 1983, conversion, breach of fiduciary duty, and unjust enrichment.

¶ 8    On June 3, 2022, the parties entered into a settlement agreement. The settlement agreement provided that it was entered by and among Mr. Barbari, Mr. Mufarreh, Joseph Ortinau, Mr.

Zanayed, Protégé, BAMCO, and numerous other parties who are not parties to this lawsuit. The settlement agreement resolved disputes among the parties in four separate lawsuits and one arbitration proceeding. The agreement provided for payments among the parties, including payments from Mr. Zanayed to Mr. Mufarreh and Mr. Ortinau, and required Mr. Mufarreh and Mr. Ortinau to divest themselves of their interest in Protégé and resign from their positions. The agreement also required Mr. Mufarreh to transfer his interest in certain real property to Mr. Zanayed and Protégé (the Burr Ridge Properties). Paragraph 2 of the settlement agreement, which is titled "Settlement Payments," is redacted from the record filed on appeal.

¶ 9    Mr. Zanayed filed his first motion to enforce the settlement agreement on December 1, 2022. Mr. Zanayed alleged that under the terms of the settlement agreement, he was required to make certain payments to Mr. Mufarreh and Mr. Ortinau. Mr. Zanayed represented that he had made all the required payments to date. He maintained, however, that Mr. Mufarreh and Mr. Ortinau had failed to transfer the Burr Ridge Properties as required.

¶ 10    Mr. Zanayed learned that in September 2022, CFIT Holdings Corporation (CFIT) obtained a judgment against Mr. Mufarreh and Mr. Zanayed arising out of claims pertaining to the "Gym Entities." The Gym Entities are defined in the settlement agreement as a group of gyms in the Chicago area that were owned by the parties. Mr. Zanayed maintained that pursuant to paragraph 13 of the settlement agreement, Mr. Mufarreh and Mr. Ortinau were required to indemnify and defend Mr. Zanayed from claims arising from the Gym Entities. Paragraph 13 of the settlement agreement is titled "Indemnification." As relevant here, paragraph 13(c) provides:

> "From and after the Effective Date, Mufarreh, Ortinau and the Gym Entities shall indemnify and defend Zanayed from and against any and all claims, demands, costs, fees, damages, penalties, suits, arbitrations or other actions that arise out of or are related to the

operation of the Gym Entities, including, without limitation, all debts owed by the Gym Entities and guarantees executed by Zanayed on behalf of Mufarreh or the Gym Entities, all claims for attorneys' liens, fees and costs brought by attorneys hired by Mufarreh, Ortinau and the Gym Entities, and all claims arising out of the dissolution of the Voting Trust referenced in paragraph 14 of this Agreement, whenever they arose."

Paragraph 13(e) provides:

"Mufarreh, Ortinau and/or the Gym Entities shall deposit the amount of known liabilities ("Known Liabilities") for which they are indemnifying Zanayed into escrow immediately upon the completion of Zanayed and Protégé's performance of their Settlement Payment obligations set forth in Paragraph 2. The monies will be released to Mufarreh, Ortinau, BAMCO and/or the Gym Entities pro rata as Zanayed is released from the Known Liabilities. The escrow shall be set up with Chicago Title and Trust Company using an appropriate Chicago Title form escrow agreement."

Mr. Zanayed maintained that because of the CFIT judgment, the parties were unable to sell the Burr Ridge Properties. As a result, Mr. Zanayed could not obtain the funds to satisfy his payment obligations under the agreement.

¶ 11     Mr. Zanayed contended that the transfer of the Burr Ridge Properties was necessary so that he and Protégé could refinance or sell the property to make the settlement payments to Mr. Mufarreh and Mr. Ortinau. Mr. Zanayed asked the court to enforce the settlement agreement by requiring Mr. Mufarreh and Mr. Ortinau to make certain payments to third parties or by allowing Protégé and Mr. Zanayed to pay those obligations and deduct the amount paid from their balance under the settlement agreement. Mr. Zanayed also asked for an extension of his time to make payments pursuant to the settlement agreement and asked the court to order Mr. Mufarreh and Mr.

Ortinau to reimburse Protégé for certain expenses incurred based on their failure to comply with the terms of the settlement agreement.

¶ 12     Mr. Mufarreh moved to dismiss the motion to enforce the settlement agreement for lack of jurisdiction, which the trial court denied.

¶ 13     The court held a hearing on Mr. Zanayed's motion to enforce the settlement agreement on January 24, 2023. The court granted the motion in an oral ruling and subsequently entered a written order. In its oral ruling, the court found that there was "no dispute" that Mr. Mufarreh was in breach of the settlement agreement by failing to transfer the Burr Ridge Properties, and the only question was whether Mr. Zanayed's subsequent breach by failing to pay the amounts due under paragraph 2, "change[d] the terms of the" settlement agreement. The trial court reviewed paragraph 2(a) of the settlement agreement, observing that it required Mr. Zanayed to pay Mr. Mufarreh a certain amount within 180 days of the effective date of the settlement agreement, which would have been December 3, 2022. The court noted that Mr. Zanayed had already paid Mr. Mufarreh a "significant amount" of money, but still owed him an additional amount.[1] The court continued that paragraph 2(b) of the settlement agreement provided that " 'all proceeds generated from the sale of any asset owned by Protégé *** shall be applied toward the payment of the settlement payment obligations set forth in paragraph 2(a), until such obligations are fully paid.' " The court concluded that "reading paragraph 2(a) and 2(b), money owed to Mufarreh was to come from selling and/or refinancing the specifically named properties known as the Burr Ridge properties, and proceeds from that transaction was to be applied to the money owed to Mufarreh."

---

[1]The dollar amounts are redacted from the trial court's oral ruling.

¶ 14    The court continued that paragraph 3(b) required Mr. Mufarreh to transfer his interest in the Burr Ridge Properties "promptly," within 180 days after the effective date of the settlement agreement, but Mr. Mufarreh had not transferred his interest in the property. The court found that the requirements in paragraphs 2 and 3 were "dependent on the other, and they are not independent of the other." "In other words, Zanayed owes Mufarreh money. Mufarreh owes Zanayed property interest. There is to be a trade of interest in property for money and when that happens, the final transfer of money can occur." The court ordered Mr. Mufarreh to take all necessary steps to transfer his interest in the Burr Ridge Properties as required by the settlement agreement. The court stayed Mr. Zanayed's obligation to pay Mr. Mufarreh under the terms of the settlement agreement until the sale of the Burr Ridge Properties.

¶ 15    The court also addressed the issue of indemnity under paragraph 13(c) of the settlement agreement. The agreement provided that Mr. Mufarreh would deposit the amount of the "known liabilities" into an escrow account immediately after Mr. Zanayed made the settlement payments under paragraph 2. The court found that Mr. Mufarreh could not deposit the money into the escrow account until Mr. Zanayed completed the settlement payments, which could not occur until Mr. Mufarreh transferred the Burr Ridge Properties. The court therefore continued the issue of indemnity until the sale of the Burr Ridge Properties had been completed.

¶ 16    The court also continued the issue of attorney fees based on paragraph 18 of the settlement agreement which provided that the prevailing party in an action for breach of the settlement agreement would be entitled to reasonable attorney fees. The court found that Mr. Zanayed was the prevailing party, but continued the issue of the amount of attorney fees until after the sale of the property.

¶ 17    The court subsequently entered a written order on February 7, 2023, finding:

"Protégé and Zanayed's obligation to make the final payment due under the settlement agreement is stayed until such time as title to the Burr Ridge Properties are transferred to Protégé free and clear of all liens and encumbrances except the first mortgage, and Protégé has a reasonable opportunity to sell or refinance the Burr Ridge Properties.

The parties are to cooperate in the transfer of the title of the Burr Ridge Properties and the release of Mufarreh and Ortinau from the first mortgages on the Burr Ridge Properties. The issues relating to the obligation to defend and indemnify Zanayed are entered and continued to the next status date.

The court finds that Mufarreh breached the settlement agreement and that Protégé and Zanayed are entitled to attorneys' fees in accordance with the settlement agreement. The date for filing a fee petition will be set at a future court date."

¶ 18    Following the trial court's order, Mr. Mufarreh filed an interlocutory appeal to this court. The sole issue raised by Mr. Mufarreh was: "Whether the trial court retained jurisdiction to enforce a settlement agreement." This court found that the trial court retained jurisdiction and affirmed the trial court's orders. *Zanayed*, 2024 IL App (1st) 230331-U.

¶ 19    While that appeal was pending, Mr. Zanayed filed a second motion to enforce the settlement agreement. Mr. Zanayed once again sought an order requiring Mr. Mufarreh to transfer the Burr Ridge Properties under the terms of the settlement agreement. Mr. Zanayed noted that the properties were encumbered by a judgment lien recorded by CFIT. Mr. Zanayed represented that the title company was willing to insure title of the real property subject to the deposit of the proceeds into a title indemnity escrow account to protect the title company in the event Mr. Mufarreh was unable to satisfy the judgment. Mr. Zanayed sought an order requiring Mr. Mufarreh to convey the Burr Ridge Properties to Protégé pursuant to the agreement and to allow Protégé to

deposit funds from the sale or refinance of the property into the title indemnity escrow account. Mr. Zanayed also attached a fee petition to the motion, requesting attorney fees of $51,742.25. With regard to the indemnity issue, Mr. Zanayed requested $50,000.

¶ 20    In response, Mr. Mufarreh repeated his argument that the trial court lacked jurisdiction to enforce the settlement agreement. In the alternative, he asked the trial court to deny the motion without prejudice pending a decision from this court on the pending appeal. As to the merits, Mr. Mufarreh asserted that the motion to enforce was contrary to the plain language of the settlement agreement which provided that he was not required to transfer his interest in the Burr Ridge Properties until after Mr. Zanayed and Protégé made the payments under paragraph 2.

¶ 21    On February 16, 2024, this court entered the Rule 23 order finding that the trial court intended to retain jurisdiction to enforce the settlement agreement and affirming its orders. On March 6, 2024, the trial court entered a written order granting Mr. Zanayed's second motion to enforce the settlement agreement. The court ordered Mr. Mufarreh to execute deeds or otherwise transfer his interest in the Burr Ridge Properties to Protégé. The court further ordered Protégé to sell or refinance the properties and deposit the funds into a title indemnity account. Funds would be deducted from that account in amount sufficient to satisfy the sums owed to Mr. Mufarreh under the settlement agreement. The court also granted Mr. Zanayed's attorney fees petition, finding that the hourly rates and time spent were reasonable.

¶ 22    Mr. Mufarreh filed a timely notice of appeal on April 4, 2024, pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 23                                  II. ANALYSIS

¶ 24    On appeal, Mr. Mufarreh contends that the trial court erred in ordering him to establish an escrow account where paragraph 13(e) of the settlement agreement provides that he is not required

to establish an escrow account to indemnify Mr. Zanayed and Protégé until after they satisfy their payment obligations under paragraph 2. Mr. Mufarreh maintains that the trial court's interpretation of the settlement agreement changes the agreement to the opposite of its plain language, requiring Mr. Mufarreh to perform his obligations before Mr. Zanayed is required to complete the payments. Mr. Mufarreh also asserts that we should reverse the award of attorney fees to Mr. Zanayed because he was not the "prevailing party."

¶ 25                                  A. Standard of Review

¶ 26    We first observe that the parties disagree as to the standard of review to be applied on appeal. Mr. Mufarreh asserts that the question raised on appeal concerns the interpretation of a contract, which we review *de novo*. Mr. Zanayed and Protégé contend that this court will not disturb a trial court's ruling to enforce a settlement agreement absent an abuse of discretion. Mr. Zanayed and Protégé also maintain that we review a trial court's award of attorney fees for abuse of discretion.

¶ 27    "A settlement agreement is in the nature of a contract and is governed by principles of contract law." *K4 Enterprises, Inc. v. Grater, Inc.*, 394 Ill. App. 3d 307, 313 (2009). In this case, Mr. Zanayed's motion to enforce the settlement agreement in essence sought specific performance of the agreement's terms. "To state a cause of action for specific performance, a plaintiff must allege the following elements: (1) the existence of a valid, binding, and enforceable contract; (2) compliance by the plaintiff with the terms of the contract or proof that the plaintiff was ready, willing, and able to perform the terms of the contract; and (3) the failure or refusal of the defendant to perform its part of the contract." *McGoey v. Brace*, 2022 IL App (1st) 210322, ¶ 24. "In order for a party to be entitled to specific performance, the contract must be so certain and unambiguous

in its terms and in all its parts that a court can require the specific thing contracted for to be done." *Schilling v. Stahl*, 395 Ill. App. 3d 882, 884-85 (2019).

¶ 28    Here, neither party contends that the settlement agreement is uncertain or ambiguous. As explained below, Mr. Mufarreh's contentions solely challenge the trial court's application of the unambiguous terms of the settlement agreement. Therefore, the questions before us are whether the trial court erred in ordering the parties to perform under the contract and whether the performance ordered by the trial court is supported by the agreement's terms. Whether specific performance is available as a remedy " 'rests in the sound discretion of the trial court, based on all of the facts and circumstances in evidence.' " *Id.* (quoting *Lobo IV, LLC v. V Land Chicago Canal, LLC*, 2019 IL App (1st) 170955, ¶ 64). Similarly, where a contractual agreement expressly authorizes an award of attorney fees, a trial court's decision whether to award attorney fees is a matter within its discretion and we will not disturb its determination absent an abuse of that discretion. *McNiff v. Mazda Motor of America, Inc.*, 384 Ill. App. 3d 401, 404 (2008).

¶ 29                    B. Paragraph 13 of the Settlement Agreement

¶ 30    Mr. Mufarreh's primary contention on appeal is that the trial court misinterpreted paragraph 13(e) of the settlement agreement by requiring him to establish an escrow account to indemnify Mr. Zanayed and Protégé before they completed their payment obligations under paragraph 2. We find that Mr. Mufarreh misconstrues the trial court's order. Paragraph 13(e) of the settlement agreement concerns Mr. Mufarreh's obligation to establish an escrow account to indemnify Mr. Zanayed and Protégé against " 'Known Liabilities' " related to the Gym Entities. As the trial court recognized, the escrow account established pursuant to paragraph 13(e) is to be funded by the settlement payments from plaintiffs to Mr. Mufarreh. The trial court explicitly stated that Mr. Mufarreh could not deposit the money into the escrow account until Mr. Zanayed

completed the settlement payments, which could not occur until Mr. Mufarreh transferred the Burr Ridge Properties. The trial court's March 6, 2024, order, however, does not implicate the escrow account described in paragraph 13(e), but instead requires *Protégé*, not Mr. Mufarreh, to use the funds from the sale or refinance of the Burr Ridge Properties to establish a title indemnity escrow account to protect the title company over the judgment lien recorded by CFIT in the event Mr. Mufarreh is unable to satisfy the judgment in CFIT's favor. Thus, the title indemnity escrow account contemplated by the trial court's March 6, 2024, order is separate and distinct from the escrow account in paragraph 13(e). We therefore find no abuse of discretion.

¶ 31                                      C. Waiver

¶ 32    Although Mr. Mufarreh's principal contention on appeal concerns paragraph 13 of the settlement agreement discussed above, he also asserts that the settlement agreement requires Mr. Zanayed and Protégé to satisfy their payment obligations pursuant to paragraph 2 by November 30, 2022. As his pleadings before the trial court demonstrate, Mr. Mufarreh has consistently disputed the trial court's ruling that he is required to transfer the Burr Ridge Properties before Mr. Zanayed and Protégé are required to satisfy their payment obligations under paragraph 2 of the settlement agreement. Indeed, in his opening brief before this court, Mr. Mufarreh presents the issue raised on appeal as: "Whether the trial court erred requiring defendant to transfer title to real property before being paid, notwithstanding the settlement agreement placing no such limitation on defendant's right to payment under the contract."

¶ 33    In addition, in his reply brief, he asserts that the plain language of paragraph 2 provides that Mr. Zanayed and Protégé were required to make their payments by November 30, 2022, "without any precondition involving the transfer of the Burr Ridge Properties." He continues that the trial court "erred by not enforcing this provision as written." He maintains that Mr. Zanayed

and Protégé breached the settlement agreement by failing to fulfill their payment obligations "despite [Mr. Mufarreh's] full performance under the [settlement agreement] by transferring his Protege stock in June 2022. Plaintiff has enjoyed the benefits of this stock without fulfilling his payment obligation. Over two years have elapsed, and Plaintiff remains in possession of Defendant's Protege stock without making the required payment."

¶ 34    To the extent that Mr. Mufarreh challenges the trial court's ruling that Mr. Zanayed and Protégé's obligation to make payments pursuant to paragraph 2 of the settlement agreement is stayed until after Mr. Mufarreh transfers the Burr Ridge Properties, we find that Mr. Mufarreh has waived this contention by failing to raise it in the prior appeal. It is well-settled that "no question which was raised *or could have been raised* in a prior appeal on the merits can be urged on subsequent appeal and *those not raised are considered waived*." (Emphases added.) *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 413 (1970). If " 'there have been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or re-examined in a second appeal.' " *In re Christopher K.*, 217 Ill. 2d 348, 365 (2005) (quoting 5 Am.Jur. 2d Appellate Review § 605, at 300 (1995)).

¶ 35    Although Mr. Mufarreh solely challenged the trial court's jurisdiction to enforce the settlement agreement in the prior appeal, the record is such that he could have raised the same arguments concerning paragraphs 2 and 3 of the settlement agreement he now raises in the current appeal. A review of the trial court's February 7, 2023, and March 6, 2024, orders, and taking into account the trial court's oral pronouncements before entering the written order on February 7, 2023, reveals that the relief granted by the trial court in both orders is essentially the same. Mr. Zanayed and Protégé are required to make payments to Mr. Mufarreh under paragraph 2 of the settlement agreement. Mr. Zanayed and Protégé cannot make those payments until Mr. Mufarreh

- 13 -

transfers the Burr Ridge Properties pursuant to paragraph 3 so that Protégé can sell or refinance those properties. Mr. Mufarreh's failure to transfer the Burr Ridge Properties constitutes a breach of the settlement agreement. Mr. Mufarreh is required to transfer the Burr Ridge Properties to Mr. Zanayed and Protégé before Mr. Zanayed and Protégé and required to perform under the settlement agreement. Mr. Zanayed is the prevailing party and is entitled to recover attorney fees.

¶ 36    The only additional obligation included in the March 6, 2024, order is that Protégé is to use the proceeds from the sale or refinance of the Burr Ridge Properties to fund a title indemnity account to insure the title company. Mr. Mufarreh improperly relies on this distinction to challenge rulings that he could have challenged in the prior appeal. By failing to raise any challenge to the merits of the trial court's February 7, 2023, order in the prior appeal, Mr. Mufarreh has waived any challenge to the trial court's determination that he is required to transfer the Burr Ridge Properties to Protégé before Mr. Zanayed and Protégé are required to make payments pursuant to paragraph 2.

¶ 37    For the same reasons, Mr. Mufarreh has waived any challenge to the trial court's ruling that Mr. Zanayed is the prevailing party and that he is entitled to attorney fees under the terms of the settlement agreement. The trial court made this determination in its February 7, 2023, order that was the subject of the prior appeal. Mr. Mufarreh did not challenge that ruling and solely raised contentions challenging the trial court's jurisdiction. Although the trial court's March 6, 2024, order established the amount of attorney fees, Mr. Mufarreh does not challenge the determination of the amount of fees. He solely challenges the trial court's determination that Mr. Zanayed is the prevailing party and is entitled to attorney fees; a contention which he could have raised in the prior appeal.

¶ 38 Accordingly, we find Mr. Mufarreh has waived any challenges to the trial court's interpretation of paragraphs 2 and 3 of the settlement agreement as it relates to the timing of Mr. Zanayed and Protégé's payment obligations and Mr. Mufarreh's obligation to transfer the Burr Ridge Properties by failing to raise those issues in the prior appeal. We further find that Mr. Mufarreh has also waived any challenge to the trial court's determination that he breached the settlement agreement by failing to transfer the Burr Ridge Properties, that Mr. Zanayed is the prevailing party, and that Mr. Zanayed is entitled to attorney fees.

¶ 39                                III. CONCLUSION

¶ 40 For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 41 Affirmed.

¶ 42 PRESIDING JUSTICE MITCHELL, dissenting:

¶ 43 For the reasons articulated in my separate opinion when this case was last before us, I believe the circuit court lost jurisdiction over the matter. *Zanayed v. Mufarreh*, 2024 IL App (1st) 230331-U, ¶¶ 45-51 (Mitchell, P.J., dissenting). In my view, all orders entered in connection with the continued efforts to enforce the settlement agreement are void. Accordingly, I respectfully dissent.